**STOUT** et al. v. **OLIVEIRA** et al.
No. 4037.

Court of Civil Appeals of Texas.   El Paso.
March 13, 1941.

Rehearing Denied June 5, 1941.

Further Rehearing Denied July 10, 1941.

Frank B. Tirey, of Waco, Geo. W. Barcus, of Austin, and Smith & Smith and B. Ray Smith, all of Corpus Christi, for appellants.

T. L. Dyer, of Austin, Perkins & Floyd and Lloyd & Lloyd, all of Alice, Dougherty & Dougherty and Geo. P. Morrill, all of Beeville, Neel, King & Rachal, of Corpus Christi, and Bromberg, Leftwich, Carrington & Gowan, of Dallas, for appellees.

SUTTON, Justice.

We think the motions for rehearing call for a more extended discussion of our views on the proposition raised by appellant Ora L. Stout, that the judgment rendered by the Austin Court of Civil Appeals, Schallert v. Boggs, 204 S.W. 1061, reversed and remanded the judgment of the trial court in its entirety and the contention of the appellees that the appeal was a limited one and the judgment of the trial court became final as to the lands here involved. We have concluded the original opinion should be withdrawn and this opinion substituted therefor.

The suit as originally instituted was in the nature of trespass to try title, but was tried on plaintiffs' first amended original petition wherein the plaintiffs pleaded the statutory action of trespass to try title and the three, five, and ten year statutes of limitation. The purpose of the original suit apparently was to remove cloud and clear the title to Survey 375, containing 640 acres.

The plaintiffs in the original suit were Serapio Oliveira and wife, Maria G. Oliveira, and Jesus Oliveira and wife, Elvira Oliveira.

The defendants named by these plaintiffs in the original suit in the brief of appellees have been separated into four groups:

(1) Mrs. Ora L. Stout, the surviving widow of L. O. Stout, deceased, who sued, was sued and appeared individually and as independent executrix of the estate of L. O. Stout, deceased; (2) Robert Schallert and wife, Jane Schallert; (3) Mrs. Etta Doss, J. R. Doss, Mrs. Jessie Thombs, Mrs. Gordon Boggs and George Boggs, all of whom are referred to and will be herein referred to as the Boggs heirs, being the heirs of T. K. Boggs; and (4) Eloisa B. Bazan, Juana B. Bazan, Desiderio Bazan and wife, Herminia Bazan, Francisco Bazan, Mirtha B. Ramon, joined by her husband, Eduardo Ramon, Antonio Bazan, Jesus Arencias, Trinidad Bazan, Francisco B. Serna, Josefe B. de Maldonado and husband, Teodoro Maldonado, Margarita A. de Maldonado, Hilaria B. de Ortega and husband, Basilio M. Ortego, Octaviano Bazan, Jesus Bazan, Hermilinda Bazan, Trinidad Bazan, Jesus Cabrera, Sipriano Cabrera, Francisco Cabrera, Dorotio Cabrera, Genoveva Cabrera, and Juanita Cabrera, all of whom will be referred to as the Bazan heirs, being heirs of Francisco Bazan.

In addition to those original parties to this suit the Atlantic Refining Company and the Phillips Petroleum Company intervened, and Mrs. Ora L. Stout in her answer and cross-action made the original plaintiffs and all the other defendants, the two interveners, and as well T. J. Ahern, Albert Wolf, Lern Oil Corporation and W. S. Stovall, cross-defendants in her cross-action.

The controversy over Section 375, 640 acres, was between these parties. The controversy with respect to the 385.31-acre

tract was between Mrs. Ora L. Stout and Robert Schallert and his wife, and in some material respects the controversies were made to depend upon entirely different facts.

It was agreed and stipulated between all the parties that Robert Schallert was the common source of title. The Bazan heirs offered no testimony showing any title in them subsequent to the common source, and consequently went out of the trial in the trial court, and likewise cannot prevail here.

The judgment of the trial court with respect to those defendants enumerated above and referred to as the Bazan heirs, is affirmed, and all costs incurred by them will be taxed against them.

We will now consider the case with respect to Section 375, containing 640 acres.

The original plaintiffs, the two interveners, J. T. Ahern, Albert Wolf, Lern Oil Corporation and W. S. Stovall, made out their prima facie case by the introduction of muniments of title emanating from and under the common source, Robert Schallert. Mrs. Ora L. Stout then sought to establish her title to Section 375 by chain of title coming through the common source, Robert Schallert, and introduced a deed from Robert Schallert to T. K. Boggs dated September 1, 1913, wherein Robert Schallert conveyed to T. K. Boggs both tracts of land involved herein by general warranty deed; secondly, a deed from T. K. Boggs to L. O. Stout dated January 14, 1914, wherein Boggs conveyed to Stout the two tracts of land; third, the probate proceedings had in the matter of the estate of her deceased husband, L. O. Stout, wherein she was named in the will of L. O. Stout as the sole devisee of his estate.

The other parties claiming Section 375 adversely to her sought then to overcome her title by the introduction of the judgment of the 19th District Court of McLennan County, Texas, styled Robert Schallert v. T. K. Boggs et al., No. A-3686, which suit was instituted in said court on October 20, 1913, in which judgment was rendered January 8, 1917. Secondly, a lis pendens notice issued out of said cause No. A-3686 and filed in Duval County on the 22d day of October, 1913; the petition and by proof under their claim of title by limitation under the three, five and ten year statutes.

Mrs. Ora L. Stout, in response to this proof, offered by those adversely interested to her, introduced in evidence a lease contract covering said Survey 375 and entered into between her deceased husband, L. O. Stout, and Serapio Oliveira.

The trial court submitted the case on this phase of it on Serapio Oliveira's title under the ten year statute of limitation and a special issue, No. 8: "Do you find from a preponderance of the evidence that the plaintiff, Serapio Oliveira, signed the lease from L. O. Stout dated the 21st day of October, 1916?" The jury answered each of these issues favorably to the plaintiff Serapio Oliveira.

We think it may be inferred from the action of the court in submitting the case that he undertook to have it determined on the pleas of limitation and the finding with respect to the lease. The appellees, however, contend that the judgment rendered in the 19th District Court of McLennan County and appealed from by the plaintiff Robert Schallert to the Austin Court of Civil Appeals, and by that court reversed and remanded generally, being a severable one, had the effect of divesting the title out of T. K. Boggs and L. O. Stout and reinvesting it in Robert Schallert.

In the suit instituted in the District Court of McLennan County October 20, 1913, and tried and disposed of in the trial court in January, 1917, and considered in the appeal supra, styled Robert Schallert v. T. K. Boggs et al., No. A3686, Schallert sought on grounds of fraud to cancel his contracts made with the Boggs; to recover $8,000 cash he had paid them; the cancellation of his notes then outstanding in excess of the principal sum of $29,000, and in the event they had been sold, or any of them, to innocent purchasers, then the amount of those so sold; the recovery of 39 head of horses and mules delivered at an agreed price of $9,500, which was alleged to be their reasonable market value, and if sold, then their value in said sum of $9,500; and for the cancellation of his deeds to the lands involved here and the recovery thereof. The case was submitted on special issues, to which the plaintiff Schallert filed various objections and exceptions pointing out claimed errors in submitting the issues on misrepresentations and fraud. All Schallert's dealings were had with Boggs Bros., Gordon, Clayton and Hugh, sons of T. K. Boggs, and Kimsey. He merely alleged Hulsey, Tobias and Kean, the holders of certain of his notes, were parties to the conspiracy to defraud him, and had knowledge of the false representations made to

him by the Boggs and Kimsey and were, therefore, not innocent purchasers for value.

The jury found the value of the horses and mules to be $2,800. They further found the amount of the note held by Hulsey to be $3,489.40, and of all the notes given by Schallert, except eight aggregating $20,000, to be $9,454.45, whereas the undisputed proof showed the amount to be $16,171.42. The jury further found the amount of the seven notes held by Hulsey, Tobias and Kean to be $24,425.80. The judgment was in favor of Schallert against the Boggs and Kimsey for the total sum of $44,169.65, whereas the undisputed proof demonstrated the total amount to be $57,586.62. These contradictory findings were challenged in assignments I and XII in the motion for a new trial. No. I was brought forward as No. 1 in the brief. There was a very substantial difference between the amount recovered and the amount paid out by Schallert on the notes and the amount of those held by Hulsey, Tobias and Kean. Consequently Judge Jenkins, in the first paragraph of his opinion, said: "The findings of the jury as to the amount of the notes separately are contradictory of their findings as to the aggregate value, and their findings as to the value of the horses and mules is not supported by the evidence, for which reason we sustain appellant's first assignment of error."

The record discloses that the plaintiff was dissatisfied with the judgment in his favor and that it was rendered on the motion of the defendants Bank, Hulsey, Tobias and Kean. The prayer in his motion for a new trial was "that the court set aside the verdict of the jury and judgment of the court thereon thereafter entered, and grant him a new trial * * *." Vol. II, p. 417, S.F. The record is that Schallert filed his motion for a new trial March 19, 1917, "which said amended motion was on the 20th day of March, A. D. 1917 by the District Court of McLennan County, for the 19th Judicial District in all things overruled, to which order the plaintiff, Robert Schallert, in open court excepted and gave notice of appeal, and, whereas, the said Robert Schallert now desires to appeal from said judgment so rendered in said cause, * * *." Every recitation discloses the intention to appeal from the whole of the judgment. The appeal bond is made to all the defendants. Vol. II, p. 420.

As hereinabove pointed out, Schallert objected and excepted to the manner in which the court submitted the issues of misrepresentations and fraud made and practiced on him by the Boggs and Kimsey, wherein he required the jury to find the representations were both false and fraudulent; whereas the effect was the same if only false. These errors were raised in the motion for a new trial, perfected in the record and presented on the appeal. Judge Jenkins in his opinion in the second paragraph of the opinion (1) sustained these assignments. They went to the very heart of the case as against the Boggs and Kimsey, and not that portion of it as against Hulsey, Tobias and Kean. In paragraphs 5 to 7 of the opinion it is further made plain the court had in mind the reversal of the whole case.

Schallert and his attorney, as well as the court, recognized the necessity of reversing and remanding the whole case. If the judgment were severable, which we think it was not, they recognized the difficulty and impracticability of making out a prima facie case in a separate action against the holders of the notes. It was necessary, as suggested in the opinion, to establish a prima facie case of conspiracy between all the parties before much of the evidence could be admitted as against Hulsey, Tobias and Kean, or to establish the fraud and show their knowledge of it, to defeat the notes in their hands.

The suit to cancel the contracts, to cancel the deeds and recover the land, to recover the cash paid and that paid in taking up two of the notes, to recover the amount of any notes in the hands of innocent purchasers, and to recover the horses and mules or the value of them if sold, all depended upon the same evidence, and constituted a single cause of action. When the assignments challenging the action of the court in submitting the issues of misrepresentations and fraud and the findings of the jury on the value of the horses and mules, and the amounts of cash Schallert was entitled to recover, were sustained, this certainly sent the case back for a trial of the issues alone between the Boggs and Kimsey and Schallert without regard to the action with respect to the notes in the hands of Hulsey, Tobias and Kean. That judgment could not be separated and the Boggs and Kimsey forced to try the case against them in piecemeal. Schumacher Co. v. Shooter, 132 Tex. 560, 124 S.W.2d 857.

594

■■ Again, the reversal was a general one without any indication, if it might have been done, to reverse in part and affirm in part. A trial court can render but one judgment. On a motion for new trial the trial 'court, if the motion be granted, must retry the whole case. The Court of Civil Appeals, under proper circumstances, has the authority to reverse in part and affirm in part. An appeal by one party takes up the whole case and the appellate court acquires jurisdiction over the whole case and it becomes its province and duty to render such judgment as is proper and such as will give the relief the respective parties are entitled to. Thompson et al. v. Kelley et al., 100 Tex. 536, 101 S.W. 1074; Reeves et al. v. McCracken, 103 Tex. 416, 128 S. W. 895. Many other cases might be cited.

■■ If it is the intention of an appealing party to appeal from a part of the judgment, only that intention should be made clear and distinct. Barnsdall Oil Co. v. Hubbard, 130 Tex. 476, 109 S.W.2d 960, citing Slaughter v. Texas Life Ins. Co., Tex.Civ.App., 211 S.W. 350, cited in the original opinion. It follows logically, therefore, if the appellate court desires to affirm in part and reverse in part that intention should be made clear and distinct. This we regard as elementary. The record makes clear and distinct the intention of the Court of Civil Appeals to reverse and remand the whole case.

We have considered carefully each case cited by appellees on this phase of the case and regard none of them in point. Those cases are: Durham v. Scrivener, Tex.Civ. App., 259 S.W. 606; Laucheimer & Sons v. Coop, 99 Tex. 386, 89 S.W. 1061, 90 S.W. 1098; San Antonio & A. P. Ry. Co. v. Shankle & Lane, Tex.Civ.App., 183 S.W. 115; Constantine v. Fresche, 17 Tex.Civ. App. 444, 43 S.W. 1045; Pillow v. Mc-Lean, 126 Tex. 349, 88 S.W.2d 702; and Barnsdall Oil Co. v. Hubbard, 130 Tex. 476, 109 S.W.2d 960. A reading of them will make plain the inapplicability, and it will serve no purpose to make it here.

■ We have, after very careful consideration of the whole record and much independent investigation, definitely reached the conclusion the Austin Court of Civil Appeals made clear its intention to reverse the whole case; that it was the only action it could have taken under the condition of the record, because every phase of the case was made to depend upon the same evidence, and, as already pointed out, the case

was not severable. The plaintiff demonstrated that and his intention to appeal from the whole of the judgment. These conclusions, therefore, take everything out of this case with respect to lis pendens and innocent purchaser. The record in this case is silent as to what happened in the McLennan County case, except the statement made in one of the briefs that it was never tried and permitted to die. The record title to the lands involved in the instant suit at the time it was filed stood in L. O. Stout.

It follows, therefore, that the record in the McLennan County case had no place in this record.

■ Now it becomes necessary to determine whether or not Serapio Oliveira acquired title under the statutes of limitation. The finding of the jury on the issue submitted by the court for him and those claiming under him was that he had, and we think the testimony sufficient to support that finding, and that it must be upheld unless Serapio Oliveira, by reason of the lease contract introduced by Mrs. Ora L. Stout, was estopped to assert title. The facts on this phase of the case, briefly, are that the alleged lease contract was made October 21, 1916. Serapio Oliveira and his brother each testified that he fenced Section 375 and went into possession of it in 1916 and continued in possession of it down to the date of the trial. The record further discloses that for the years 1914, 1915, 1916, 1917, and 1921 to 1927, inclusive, the land was rendered in the name of L. O. Stout, and Serapio Oliveira testified that during those years he paid the taxes, that is, paid the money to the collector, but did not undertake to say whether he paid it in his own behalf or for L. O. Stout. The facts further show that for the years 1918, 1919 and 1920 Robert Schallert rendered the land and paid taxes on it. The record does not disclose the rendition and payment of taxes in the name of Serapio Oliveira.

In an effort to overcome the effect of the alleged lease Oliveira, when examined by Judge Barcus, one of the attorneys for Mrs. Stout, when the original lease with the signatures on it was exhibited to him, testified eighteen times that he couldn't remember whether the signature was his or whether he signed the contract. In an effort to commit him to a definite statement, Mr. Tirey, another of Mrs. Stout's attorneys, undertook to examine him. The only answer he could get was likewise, "I don't

remember." The Court then took him over and likewise undertook to get a definite commitment from him, and this occurred:

"By the Court: Tell Mr. Oliveira that the question is whether or not, is not whether or not he remembers signing that instrument. But the question is whether or not that is his signature, whether or not he recognizes that as his signature after examining it. Give me the instrument. After examining it and looking at it tell the Court and Jury whether or not you recognize that as your signature. A. I don't recognize it as my signature.

"Q. Now then from your examination of it, your best judgment, from your best judgment is it or is it not your signature, from your best judgment? A. That I should say it is or is not?

"Q. From your examination of it you say you don't recognize it as your signature. Now, examine it again and tell the Court and Jury whether or not that is or is not your signature, from your best judgment. A. My signature, it is my signature because I sign myself S. Oliveira, but I don't remember having signed the paper.

"Q. Well, the question is not whether that is your name there, but whether or not you have signed it. A. I don't remember having signed it. I don't recognize it as my signature. I can't say that I signed it because I don't remember having signed any paper and I can't say that I signed it because I don't remember.

"Q. Well, you have seen your own signature, have you not? Wait a minute. You have seen your cows and your horses before have you not? A. Yes, sir.

"Q. And if you missed one for several weeks and see it again you recognize it as yours or say it is not yours. Now then, that is the question. A. If it hasn't my brand on it I wouldn't recognize it.

"Q. All right, Serapio, look at this signature and tell the Court from the way it is written and the way you sign your name whether or not it is in your handwriting, whether or not you signed it. If you don't know just say you don't know, and it is not a question of whether or not you remember signing it—it is a question of whether or not it is. A. I don't know whether I signed that or not. I don't know.

"The Court: If you can do any better, go ahead. I have done the best I could."

Other testimony offered by the appellees on the signature and lease was by Jesus Oliveira, brother of Serapio, and for many years tax collector of Duval County, as follows:

"Q. You further testify that Serapio Oliveira is your brother? A. Yes, sir.

"Q. Do you know his signature? A. Don't know.

"Q. You know Serapio's signature? A. More or less I think I know him.

"Q. Have you seen him write checks, etc.? A. Yes, sir.

"Q. Would you say you know it? A. I think I know it.

"Q. I wish you would examine the 'S. Oliveira' on the bottom of the instrument, defendant's exhibit No. 34, and state whether that is his signature or not. A. I don't think it is.

"Q. Do you say it is or is not? A. I say no it is—

"Q. You say no it is not? A. No, it is not."

The appellees then offered the signature "S. Oliveira" made by Serapio Oliveira on the date of the trial.

This constitutes all the testimony from the standpoint of the appellees with respect to this lease and signature, and it is insufficient to constitute any proof.

The record further discloses that Mr. J. O. Trevino took the acknowledgment to the lease contract as Deputy County Clerk of Duval County, Texas, on the 21st day of October, 1916. The certificate of acknowledgment is in the statutory form and reads:

"State of Texas,
County of Duval.

Before me, the undersigned authority, on this day personally appeared Serapio Oliveira, known to me to be the person whose name is subscribed to the foregoing instrument, and he acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office, this the 21st day of October, 1916.

J. V. Palicios,
(Seal)   Co. Clerk, Duval Co. Texas,
By J. O. Trevino, Deputy."

The evidence shows that the seal of the County Court of Duval County was impressed on the lease contract introduced in evidence.

The evidence further shows that J. O. Trevino, as Deputy Clerk, filed the lis pen-

dens notice October 22, 1913, issued out of McLennan County, and that he has been County Clerk of Duval County since 1922 down to the date of the trial. He was not called as a witness because he had been in an automobile wreck and was unable to attend court. To illustrate the difficulty of making proof and the unsatisfactory nature of the testimony, Judge Barcus called Amando Garcia, Jr., who testified he was Deputy County Clerk under Mr. Trevino since 1927, but was unable to swear whether or not the signature was that of Mr. Trevino. Juan Martinez, also called by Judge Barcus, testified that he had been Deputy in the office of Mr. Trevino since 1938, and had seen his signature only two or three times, and was therefore unable to testify to it. He called the third deputy, Lydia Rodriguez, and that witness likewise was unable to testify to Mr. Trevino's signature.

The appellant Mrs. Ora L. Stout took the position the evidence was insufficient to show that Serapio Oliveira had not entered into the lease contract and entered upon Section 375 under it, and therefore estopped to deny the title of Stout, and that a verdict on that phase of the case should have been instructed for her, and that the court erred in not so doing. To this proposition we agree.

We think all the facts inevitably lead to but one conclusion, and that is that Serapio Oliveira entered into the lease contract and took possession of Section 375 under it, and thereby became a tenant of L. O. Stout, and cannot assert title against Stout until he has discharged the burden resting upon him to show that he has repudiated the relation of landlord and tenant and brought notice thereof home to his landlord, and that he is asserting title as against him. There is nothing in this record to indicate that any such was ever done. That proposition of law is so elementary that it is unnecessary to cite authorities, but we cite the following: Oury v. Saunders, 77 Tex. 278, 13 S.W. 1030; Buford v. Wasson, 49 Tex.Civ.App. 454, 109 S.W. 275; Flanagan v. Pearson, 61 Tex. 302; Juneman v. Franklin, 67 Tex. 411, 3 S.W. 562; Jones v. Adkins, Tex.Civ.App., 281 S.W. 299; Hardcastle v. Fitzgerald, Tex. Civ.App., 27 S.W.2d 302; Geries v. Magness, Tex.Civ.App., 31 S.W.2d 167; Federal Land Bank v. King, 132 Tex. 481, 122 S.W.2d 1061.

We can hardly believe that Mr. Trevino, with his long years of service in the court-house of Duval County in the capacity of County Clerk and Deputy County Clerk, could have been a party to a false certificate of acknowledgment.

Furthermore, the statute, Article 3723, R.C.S.1925, makes the certificate of acknowledgment evidence of the facts therein stated in any court of this State. It has been held that a certificate of acknowledgment is prima facie evidence of all facts therein recited, and that the recitals are conclusive unless fraud or imposition are shown, and that the burden of proof is on one who denies the genuineness of the acknowledgment and instrument to show such facts. Ellington v. Bryant, Tex.Civ.App., 293 S.W. 327; Ward v. Weaver, Tex.Com.App., 34 S.W.2d 1093; Hill v. McIntyre Drilling Co., Tex. Civ.App., 59 S.W.2d 193; Adkins-Polk Co. v. Rhodes, Tex.Com.App., 24 S.W.2d 351; Hughes v. Dopson, Tex.Civ.App., 135 S.W. 2d 148; Norris v. Lancaster et al., Tex. Com.App., 280 S.W. 574; Smith et al. v. Dozier Const. Co., Tex.Civ.App., 66 S.W.2d 744, and authorities cited; Thane v. Dallas Joint Stock Land Bank, Tex. Civ.App., 129 S.W.2d 795.

The certificate of acknowledgment, therefore, was prima facie evidence that Oliveira personally appeared before Mr. Trevino and acknowledged that he executed the instrument for the purposes and consideration therein expressed. To overcome those recitals it was not enough to show the signature affixed to the lease contract was not his own. We are not prepared to say the proof in this case was sufficient to do that. The legal effect of all the testimony with respect to the signature is insufficient to constitute any proof, and the answer of the jury to Special Issue No. 8 is without proof to support it. It is not necessary that the signature or mark be affixed to an instrument to give it validity. That may be done by another person or typewritten in, or stamped in with a rubber stamp, or, if the signature be forged, it may be adopted. Mondragon et al. v. Mondragon, 113 Tex. 404, 257 S.W. 215. A written contract, though unsigned by a party to it, if accepted or performed or the benefits under it accepted becomes the written contract of such a party. Martin v. Roberts, 57 Tex. 564; Clegg v. Brannan, 111 Tex. 367, 234 S.W. 1076; Copeland v. Hill et al., Tex.Civ.App., 126 S.W.2d 567. To overcome the certificate the burden was on Serapio Oliveira to show he had not appeared before Mr. Trevino, or,

if he did, that the officer practiced some fraud or imposition on him; that he had not entered into the contract for the purposes and consideration therein expressed. To overcome an instrument in writing and purporting to be duly acknowledged, the proof must be clear and unmistakable. The reason is obvious, because, if the rule were otherwise, titles would be insecure and ruinous consequences would ensue from the doubt and uncertainty with which titles would· be clouded. Wiley & Co. v. Prince, 21 Tex. 637. To permit this finding of the jury to stand and the title to be overturned, would subject muniments of title to attack on the weakest sort of unsatisfactory proof. This has not yet been done, and cannot be done.

The writer here thinks this Court ought not to reverse and remand and is not justified in doing so when there has been a fair opportunity to develop it, and by such reversal and remand hold out the invitation to interested witnesses and parties to litigation to resort to what to them seem to be the necessities of the situation which they would not do under ordinary circumstances.

From what has already been said, it follows, therefore, that the judgment, in so far as it concerns Section 375, the 640 acre tract, must be reversed and rendered in favor of the appellant Mrs. Ora L. Stout, for a recovery as against all the adverse claimants of Section 375, and that she recover her costs. The judgment in this respect is reversed and rendered, and it is so ordered, as in the original opinion, and appellees' motion for rehearing is overruled.

· We now come to a consideration of the other end of the case and the controversy between Mrs. Ora L. Stout and Robert Schallert and wife with respect to the 385.31 acre tract.

The trial court submitted the title of Schallert and wife on their claim under the statutes of limitation of five and ten years, Vernon's Ann.Civ.St. arts. 5509, 5510. The jury found on the issues submitted by the court in favor of the Schallerts, and judgment was rendered on those findings in their favor. Complaint is made by the appellant Ora L. Stout, as to the manner of submitting those issues; that the evidence shows that Schallert did not hold under a deed duly registered, and was therefore not entitled to recover under the five year statute; that the court erred in not instructing a verdict in her favor; and that

the case ought to be reversed as a whole because of improper argument by one of appellees' counsel.

We think the objections to the charge of the court are not well taken in so far as the form and definitions are concerned, and therefore overrule her assignments and propositions in that respect.

We are also of the opinion that the evidence is sufficient to' support the finding of the jury. The possession and use of the lands were such as are customary and usual, and such as the lands were susceptible of; that is, they were enclosed by sufficient fences and used for grazing livestock thereon, for which purpose the land was adaptable and such lands in that area commonly used for.

■ The issues raised on the admission of the voluminous record in the McLennan County suit, both on the trial and on the appeal thereof, and the argument of counsel, have presented more difficulties.

The appellant Mrs. Ora L. Stout was not bound by the judgment in that case, and it therefore had no place in this record. At the time it was offered and received, the trial court could not anticipate that the necessary proof, that is, that L. O. Stout was a purchaser pendente lite, would not be made, and was justified, therefore, in overruling the objection to it and admitting it at that time. It should have and might· have properly been stricken after the failure of that proof on a proper motion, but the record does not disclose any such motion. The record shows further at the time that evidence was offered, the court admitted it, not for the jury, but on the law, and the record is silent as to whether or not it was read to the jury. In other words, the record does not disclose that it was read to the jury. The bills of exceptions on the argument of counsel disclose that in each instance when the appellant objected to the argument, the court sustained the objection and instructed the jury not to consider it. In the other instances it was permitted to be made without objection, and was merely shown to have occurred by bill of exception. If the records in the McLennan County case were not read to the jury, then the remarks of counsel to the jury could have hardly had much meaning or effect. In other words, without the record before the jury the· remarks were meaningless and harmless. We are of the opinion, under

the record here, the matters complained of are not of such seriousness and importance to justify a reversal on that ground. This is especially true in view of the fact we regard the testimony as sufficient to support the issue of title by limitation.

We have considered the appellees' several assignments on this phase of the case and have reached the conclusion that they do not justify and warrant a reversal of the case on this phase of it. The court should not do an apparently useless and expensive thing.

The judgment as between appellant Mrs. Ora L. Stout and Robert Schallert and wife, in so far as it permits a recovery in favor of the Schallerts against Mrs. Ora L. Stout is affirmed, and it is so ordered, as in the original opinion, and appellant's motion for rehearing is overruled.