Teresa Losoya LEYVA and husband, Manuel Leyva, Appellants,

v.

Luz P. PACHECO, Sr., Appellee.

No. 5491.

Court of Civil Appeals of Texas.

El Paso.

Dec. 6, 1961.

Rehearing Denied Jan. 17, 1962.

 

troduced in evidence a deed from Antonio Pacheco and wife, Valentina, to appellee, in 1949, some five years after the deed to Pacheco from Gallegos. Appellee claims title by virtue of this 1949 deed, and title by limitations thereunder on a claim of three years' adverse possession.

The jury found that appellants paid the $300.00 purchase price to Gallegos; that appellee knew it, and that the property was taken in the name of Antonio Pacheco in trust for the use and benefit of appellant; that appellant paid the sum of $975.00 to a contractor for the building of a four-room house on the property; that appellee knew this. That the signature of Valentina M. Pacheco on the 1949 deed was a forgery (Mrs. Valentina Pacheco died in 1951); that Antonio Pacheco did not receive any consideration from appellee for the 1949 deed, and that said Pacheco did not knowingly sign and deliver such instrument to appellee. That appellant was claiming an interest in the property prior to the date of the deed in 1949, and that appellee knew it. Then, in the eleventh issue, the jury found that appellee, either through himself or tenants, had peaceable and adverse possession of the premises, using it and enjoying the same for as long as three years prior to the filing of this suit in 1954.

We will attempt to dispose of this matter as logically as is possible under the circumstances and the state of the record.

Appellant first argues that the court should have rendered judgment for her, because the evidence shows a resulting trust arose in her favor. The record appears to indicate that she testified, as did her sister, to the payment by her of the purchase price of the lots. Mr. Pacheco testified to the same effect, but contradicts himself in the record by a sworn statement issued and signed by him in 1954. In all charity it must be stated that his testimony, taken along with the testimony of others with reference to his health, makes it difficult to get very much substantial or reliable help from his statements. Appellee, of

Guinn, Guinn & Truex, El Paso, for appellants.

Andress, Lipscomb, Peticolas & Fisk, El Paso, for appellee.

FRASER, Justice.

This is a suit in the form of a trespass to try title action, brought by appellants against appellee. Appellee plead not guilty, and title by limitation. The case was submitted to the jury on eleven issues and, at the conclusion of their deliberations, the court granted appellee's motion for judgment notwithstanding the verdict, at the same time overruling appellants' motion for judgment on the verdict.

The common source of title was stipulated to be Manuel, and his wife, Maria, Gallegos. The deed from Gallegos was to the father of the litigants here, Antonio Pacheco, as grantee. There was also in-

course, denied that appellant paid Gallegos the $300.00 for the lots. Appellant further testified that she paid $975.00 to the contractor, Gonzales, for the building of the house. Appellant, however, introduced in evidence receipts totaling that specific amount, issued by the contractor to Antonio Pacheco, rather than the appellant. This is a record replete with contradiction and denial, along with considerable confusion. Appellee takes the position that no trust could have arisen because such would have been in violation of Article 7425b–7, Vernon's Annotated Civil Statutes of Texas. Both sides cite some authorities.

It is our conclusion that the appellant here failed to establish what she calls a resulting trust. It is pointed out, in the case she cites, to-wit, Cohrs v. Scott, Tex., 338 S.W.2d 127 (St.Ct.), that the parties are presumed to have intended that the grantee (Antonio Pacheco, here) hold title for the use of him (appellant) who paid the purchase price, and further that the trust arises out of the transaction and must arise at the time when the title passes. Justice Greenhill, in this same opinion, concludes that the parties there did not present sufficient evidence to have caused or proven the creation of a resulting trust. Of course the provisions of the statute quoted above are familiar to all, in that they expressly forbid the creation of a parol trust relating to realty. In Broden v. Broden (Tex.Civ.App., San Antonio, error dismissed), 330 S.W.2d 674, 676, the court points out that, " * * * Third, appellant, by his parol testimony, seeks to engraft upon deeds absolute on their face, an express trust in violation of the Texas Trust Act, Article 7425b–7." The Gallegos deed here seems to be regular on its face and recites that, in consideration of the sum of $300.00 paid by Antonio Pacheco * * * grants and sells the said property to the said Antonio Pacheco.

In summing up this difficult question, we must again state that the testimony of the grantee in the Gallegos deed, to-wit, Antonio Pacheco, as found in the record, is confused, contradictory and therefore not very reliable. With reference to the payment of the purchase price of the lots, appellant and her sister testified to one thing, appellee to another. Appellee testified that his father paid for the lots and paid for the house, and produced the receipts to verify the latter assertion. So we have here a deed, regular on its face, upon which appellant attempts to engraft what she styles a resulting trust. Taking all of the evidence into consideration, we do not think that she has provided sufficient or adequate proof to create a parol trust on a deed regular on its face.

Appellant's next point, or assignment, is that the 1949 deed was a forgery and a nullity. She produces testimony that Valentina Pacheco could not write; also, testimony from Antonio Pacheco denying that he ever signed such deed, and also stating that he received no consideration for it. Appellant argues that, based on the jury's findings, the deed was a forgery and was procured under circumstances amounting to constructive fraud. The court, in granting its judgment favorable to appellee and contrary to the jury findings, had for its consideration much testimony supporting appellee's position, which was that he paid his father and mother $500.00 for this property in 1949, in cash. He is supported in this statement by Mr. and Mrs. Cayetano Vasquez, in whose home this transaction was alleged to have taken place, and who are relatives to the parties. Both of these people testified to being present, at least part of the time, and testified that there was a sum of money in bills on the table; that Mr. and Mrs. Pacheco were there, as well as appellee and appellee's wife, and Steve Torres, a notary public. These two witnesses definitely said they saw money on the table during the time appellee was in apparent discussion with his father. Torres, the notary public, testified that he took Valentina Pacheco's acknowledgment and that she could and did write her name, and that she was examined privily

and apart from her husband as the law requires. Mrs. Vasquez testified that she saw Antonio make his mark on this 1949 deed; that there was money on the table, and that she didn't know whether Mrs. Pacheco could sign her name or not, but that she did see her with a pencil in her hand. Mr. Vasquez testified that he saw Mr. Pacheco signing something on this occasion, and that he saw some paper money in bills on the table. So we have a situation where a deed appears regular on its face, and, several years later, is attacked on the ground that the grantor did not intend to execute it or deliver it, and that grantor's wife's name was forged thereon. As indicated above, this testimony is contradicted by witnesses who were not shown to have any monetary interest in the property.

■ We do not think the jury had sufficient evidence before it to justify its finding that the deed in question was a forgery, or that grantor did not receive any consideration. The deed recites that consideration passed, and several witnesses testified that they saw money on the table; and, of course, appellee swears that he paid $500.00 in cash at the time to his father. The courts give much credence and weight to the certificate of the notary public reciting, as it does, that both parties did execute the instrument for the consideration therein expressed. This court passed on that matter in the case of Stout v. Oliveira, Tex.Civ.App., 153 S.W.2d 590, 596 (ref'd. w. m.). We quote from the opinion by the late Justice Sutton:

"To overcome the certificate the burden was on Serapio Oliveira to show he had not appeared before Mr. Trevino, or, if he did, that the officer practiced some fraud or imposition on him; that he had not entered into the contract for the purposes and consideration therein expressed. To overcome an instrument in writing and purporting to be duly acknowledged, the proof must be clear and unmistakable. The reason is obvious, because, if the rule were otherwise, titles would be insecure and ruinous consequences would ensue from the doubt and uncertainty with which titles would be clouded. * * * To permit this finding of the jury to stand and the title to be overturned, would subject muniments of title to attack on the weakest sort of unsatisfactory proof. This has not yet been done, and cannot be done."

Actually, the evidence produced by appellant consists of a denial by the aged Mr. Antonio Pacheco that he signed the statement, and statements by a sister and aunt, one of whom lived in El Paso and the other in California (Valentina Pacheco lived in Ysleta), that Valentina Pacheco could not sign her name. We do not think this is sufficient evidence to uphold the jury's findings and overturn the notary's certificate and the evidence of the other witnesses, plus the existence of a deed that appears completely regular on its face. It is especially significant that several witnesses support the notary public's testimony. Lastly, without detailing same it appears that the evidence is adequate to sustain the jury's finding that appellee did acquire possession by limitation. Again there is some contest between the parties, but the jury apparently believed that Antonio Pacheco occupied the property as the tenant of appellee—this, on the basis of the testimony of appellee in which he mentions having plastered the inside of the house, remodeling it, etc.

It must be noted that, in 1954, Mr. Antonio Pacheco made a statement to attorney A. C. Gonzalez, Jr., who testified that he explained everything carefully in Spanish to Mr. Pacheco. In this statement Mr. Pacheco said that he did buy the property himself, and did convey it to his son for $500.00; also, that his son (appellee) had helped him, and the appellant had not; that he was getting old and wanted the property in his son's name, too, so that he could pay the taxes, and because of expected help from appellee. In his deposition for this

trial, he denies making any deed to appellee, stating that appellant was the owner of the property; and denied that he appeared in the office of W. C. Peticolas and signed the aforesaid statement in the presence of two witnesses, to-wit, Eleanor McCoy and Floy Crites. In conclusion, we are constrained to state that understanding of, or disposition of, this case is impossible without a complete reading of the record, both as to the Statement of Facts and the Transcript. For reasons of brevity, we have not detailed all of the testimony, but have tried to paint as much of the factual picture as is practicable. The entire record, as we have stated earlier, is full of such contradictions and denials and confusion that a careful and complete reading of the Statement of Facts in this case is peculiarly essential.

All appellants' points are accordingly overruled, and the decision of the trial court is in all things affirmed.