**Affirmed and Majority and Concurring Opinions filed October 26, 2021.**



In The

# Fourteenth Court of Appeals

### NO. 14-19-00531-CV

## JON VAN NGUYEN, Appellant

v.

## ALABAMA THAO PHAM, Appellee

**On Appeal from the 507th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2016-64020**

### CONCURRING OPINION

I concur in this court's judgment as there is legally- and factually-sufficient evidence in the record to support the judgment. I write separately to briefly set out Texas caselaw challenges to a certificate of acknowledgment and to explain why part IV of the opinion misapplies that law.

A notary public is a state official appointed by the secretary of state who, among other things, can take an acknowledgment of a written instrument in this

state. Tex. Gov't Code Ann. §§ 406.001–.113; Tex. Civ. Prac. & Rem. Code Ann. § 121.001(3). The notary public "may not take the acknowledgment of a written instrument unless the officer knows or has satisfactory evidence that the acknowledging person is the person who executed the instrument and is described in it." Tex. Civ. Prac. & Rem. Code Ann. § 121.005(a). This statutory scheme would be meaningless if a notary public's acknowledgment did not constitute prima facie proof of the identity of the person who executed the instrument. And Texas appellate courts have most certainly given meaning to such acknowledgements.

The majority correctly acknowledges the rule that "[c]lear and unmistakable proof that either the grantor did not appear before the notary or that the notary practiced some fraud or imposition upon the grantor is necessary to overcome the validity of a certificate of acknowledgment," citing *Morris v. Wells Fargo Bank, N.A.*, 334 S.W.3d 838, 843 (Tex. App.—Dallas 2011, no pet.). This rule dates back at least to 1941 and the opinion of the El Paso Court of Civil Appeals in *Stout v. Oliveira*, 153 S.W.2d 590, 597 (Tex. Civ. App.—El Paso 1941, writ ref'd w.o.m.) ("To overcome an instrument in writing and purporting to be duly acknowledged, the proof must be clear and unmistakable."). Even 80 years ago, the reasoning behind this requirement was "obvious": "The reason is obvious, because, if the rule were otherwise, titles would be insecure and ruinous consequences would ensue from the doubt and uncertainty with which titles would be clouded." *Id. Stout* traced this reasoning back to a supreme court case from 1858, which provides:

> We have held that the certificate of the officer taking the acknowledgment of the wife to a deed of conveyance is conclusive of the facts stated, but may be rebutted by proof of fraud, mistakes, or imposition; and it has been intimated in some of the cases that to invalidate the act as to third persons, a knowledge of the fraud, imposition, etc., must be brought home to the grantee, and this rule as

2

to notice was in effect given in charge by the court below. Where the property is alienated in fee, and a consideration passes, it is but reasonable, and it is necessary for the security of titles and the protection of property that the certificate of the officer should be held as conclusively, unless the fraud or wrong charged to impeach the instrument were known to the grantee, as the circumstances were such as should have impelled him to an inquiry which he neglected.

*L.M. Wiley & Co. v. Prince*, 21 Tex. 637, 640 (1858) (citations omitted). *Prince*, in turn, relied on authority dating from 1851, when Chief Justice Hemphill appeared to address the subject for the first time:

But to the question whether the certificate of the officer is conclusive of the facts therein stated. This cause was argued at a late day, and I have been unable to give the subject the thorough examination to which it is entitled. But it seems to me, as well upon principle as authority, that the certificate must be conclusive of the facts therein stated, unless fraud or imposition is alleged.

To impeach the veracity of the certificate it will not be sufficient to allege that there was no privy examination; that she did not acknowledge the same to be her act and deed, &c. There must be some acts alleged showing fraud; as, for instance, that there was a fraudulent combination between the notary and the parties interested. The certificate in this case is in conformity with the statute, and cannot be impeached merely by saying that she was not examined apart from her husband. But few authorities have been examined, and the most important are not accessible.

*Hartley v. Frosh*, 6 Tex. 208, 216 (1851).

What, precisely, does the "clear and unmistakable" requirement entail? Despite citing caselaw using this language, the court does not meaningfully engage with this issue, which leads the court into analyzing "evidence" that is impermissible.

*Stout* provides guidance as to how to apply the "clear and unmistakable" requirement. In *Stout*, the party challenging his signature on a contract that bore a

3

certificate of acknowledgment presented evidence that (1) the signature on the document did not look like his own and (2) he did not remember signing the document. *Stout*, 153 S.W.2d at 594–95. The *Stout* court held this evidence to be insufficient. Specifically, the court held that the party challenging the notarized document must present clear and unmistakable evidence that to show either that "he had not appeared before [the notary], or, if he did, that the officer practiced some fraud or imposition on him." *Id.* at 596–97. However, "[t]o overcome those recitals *it was not enough to show the signature affixed to the lease contract was not his own*." *Id.* at 596 (emphasis added) ("The legal effect of all the testimony with respect to the signature is insufficient to constitute any proof[.]").

The message of *Stout* is clear: it is not enough to rebut a notary's acknowledgment to simply say, "That's not my signature." To do so would be to wreak havoc: "To permit this finding of the jury to stand and the title to be overturned, would subject muniments of title to attack on the weakest sort of unsatisfactory proof. This has not yet been done, and cannot be done." *Id.* at 597.

In this case, Pham testified that that she did not sign or know about the deed. This meets the requirement of presenting "clear and unmistakable" evidence not that the signature on the deed does not match her own, but that she "had not appeared before" the notary. *See id.* at 596–97; *see also Pulido v. Gonzalez*, No. 01-12-00100-CV, 2013 WL 4680415, at *4–5 (Tex. App.—Houston [1st Dist.] Aug. 29, 2013, no pet.) (mem. op.) (testimony that purported signatory did not sign deed sufficient to rebut prima facie evidence under *Stout*). The court, however, continues in its analysis to consider factors that are not relevant to the "clear and unmistakable requirement," including evidence that the signature on the deed did not match Pham's signature, which the *Stout* court held to be "insufficient to

4

constitute any proof" to rebut the prima facie case.[1] *Stout*, 153 S.W.2d at 596. In addition, the court considers Nguyen's "admission" regarding a different property, which has nothing to do with whether Pham presented clear and unmistakable evidence that she did not appear before the notary or that the notary committed fraud, as well as "representations" by Pham's attorney about bringing the notary to trial, which is not evidence at all. *See Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997) (unsworn statements of counsel generally do not constitute evidence).

Texas law has recognized for decades the importance of getting this issue right and the disastrous consequences of not doing so. Because I fear the court's opinion may lead future readers into reversible error regarding the permissible evidence to offer in the trial court when attempting to rebut prima facie evidence under these circumstances, I cannot join part IV of the court's opinion. I concur in the judgment and otherwise join in the remainder of the opinion.


/s/     Charles A. Spain
Justice


Panel consists of Justices Wise, Bourliot, and Spain (Bourliot, J., majority).

---

[1] I am troubled by the following statement in the court's opinion: "Pham's purported signature on the deed is basically just a scribble and clearly does not match her signature on several other documents in evidence that she acknowledged signing, including her driver's license and affidavits." This could be misinterpreted as this court sitting de novo as the factfinder. I have examined the documents in the appellate record and were my personal opinion on the similarity of the signatures of any legal moment, I could not join this court's hopefully unintentional suggestion that the signatures are so dissimilar that they could not all be Pham's. But my personal opinion on whether the signatures could or could not all be Pham's has nothing to do with whether there is legally- and factually-sufficient evidence to support the trial court's judgment.