## MOORE v. CHESAPEAKE & O. RY. CO.

### No. 6092.

United States Court of Appeals
Fourth Circuit.

Argued June 20, 1950.

Decided Aug. 10, 1950.

Writ of Certiorari Granted Nov. 6, 1950.
See 71 S.Ct. 123.

George E. Allen, Richmond, Va. (Allen, Allen & Allen, Richmond, Va., on brief) for appellant.

Meade T. Spicer, Jr., and Walter Leake, Richmond, Va. (Strother Hynes, Richmond, Va., on brief) for appellee.

Before PARKER, Chief Judge, and DOBIE, Circuit Judges, and MOORE, District Judge.

MOORE, District Judge:

Appellant brought this action under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. in the District Court for the Eastern District of Virginia, alleging that the death of her decedent, Louis A. Moore, Jr., was caused by negligence of appellee's agents and seeking to recover damages therefor. At the close of the evidence appellee moved the Court to direct a verdict in its favor. The Court reserved decision on the motion and submitted the case to the jury, which returned a verdict for appellant in the amount of $34,000.00. Upon motion then made by appellee the Court set aside the verdict and entered judgment for appellee. The case is here on appeal from the District Court's action.

Moore fell from the footboard of an engine tender while engaged in the performance of his duties as a brakeman for appellee in shifting operations on the Fulton Yards of appellee at Richmond, Virginia. The only eye witness to the accident was appellee's engineer, who was called as a witness for appellant. He testified that he was backing the engine and tender at the rate of about five miles per hour, pulling thirty-three cars. It was mid-afternoon and the weather was fair. Moore was standing on a footboard which was attached to the rear of the tender (being the front of the train while backing) at a height of about one foot above the top of the rail. He was facing forward, in the direction in which the train was moving. The outside end of the footboard on which Moore was standing was ten inches from the outside edge of the tender, and the distance from the footboard to the top of the tender was eight feet, seven inches. The engineer further testified that prior to the accident he could see part of Moore's left shoulder and arm while the latter was standing at the end of the footboard with his back to the engineer. In answer to a question whether Moore was "standing up straight", he said that he was; and on further questioning said that "he was standing up like that and he started to slump"; that it seemed as if Moore's knees gave way and he pitched from the footboard in a kind of somersault, striking the ground on the back part of his shoulder. The engineer said that he then made an emergency application of the brakes, which, because the air had been disconnected from the cars, did not bring the train to an immediate stop; the tender, engine, one car and about half the second car passing the spot where Moore had fallen beside the track. Moore was dead when the engineer reached him, his body lying outside the track and at an angle to it. Later examination showed that his neck was broken, his lower left arm severed, several of his ribs fractured, and his lungs punctured.

No other affirmative evidence bearing on the facts immediately surrounding the accident was adduced.

Having elicited the foregoing testimony from the engineer, appellant's counsel attempted to show, both by questions to the engineer and by an expert witness, that, because of the height of the tender above the footboard and the distance from the end of the footboard to the edge of the tender, the engineer's view was obstructed and it would have been impossible for him to see

Moore while the latter was "standing up straight" on the footboard. However it was shown by a photograph introduced in evidence that the left shoulder and arm of a man standing on the footboard in a position only slightly varying from the perpendicular and supporting himself by the hand rail would have been clearly visible to the engineer.

Appellee, with corroboration from appellant, who was examined as a witness in her own behalf, proved that Moore had suffered a coronary occlusion thirteen months before his death, which, in the opinion of the attending physician at the time of treatment, was thought likely to recur. The physician who examined the body at the undertaker's establishment certified that death was due to the injuries sustained in the fall. No autopsy was made to determine whether there were signs of a recurrence of the heart condition.

Appellant's argument is as follows: She has shown (she says) that the engineer made an emergency stop, that Moore fell from the footboard, sustaining injuries from which he died, and that it was impossible for the engineer to see Moore while the latter was "standing up straight" on the footboard of the tender, as the engineer testified he was standing. Therefore, her argument continues, since the engineer testified falsely that he saw Moore start to fall, the jury might reasonably infer that the engineer, for some reason unconnected with Moore's fall from the footboard, made a sudden stop without warning Moore, *causing* the latter to fall from the footboard to his death, and that the engineer, as appellee's agent, was guilty of actionable negligence.

We are not impressed with his argument. We hold that the District Court correctly sustained appellee's motion for a directed verdict. We find in the record no evidence sufficient to support an inference of any negligent act on the part of the engineer, or that his stopping the train caused Moore to fall. It is elementary that mere proof that an accident occurred affords no basis for an inference that it was caused by negligence. It was not enough for appellant simply to show that the engineer stopped the train suddenly. Humane feelings required such action when the engineer saw, as he said he did, that Moore had fallen or was falling off the footboard. To warrant an inference of negligence, appellant must have proved that the emergency stop was begun *before* Moore fell. This she failed to do.

In none of the cases cited by appellant do we find support for her argument that the evidence in this case is sufficient to supply an inference of negligence. In Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610, 143 A.L.R. 967, a railroad employee, while standing between two tracks on a dark night inspecting the seals on the cars of a train moving slowly by him, was struck by the rear car of a train backing up on the adjoining track. It was held that there was a question of negligence for the jury. In Tennant v. Peoria and P. U. Ry. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520, an engine crew were engaged in coupling cars situated intermittently along a track. Having completed the coupling operations, the engine remained stationary for five or ten minutes during which time the switchman disappeared around the rear of the engine going toward a point where his duties required him to be. He was never again seen alive. The engineer backed the engine up without ringing the bell, as, according to some of the conflicting evidence, he was required to do by a rule of the railroad company. Parts of the switchman's body were later found strewn along the track. The Court held that the question of proximate cause was one for the jury. In Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916, a switch tender was struck on a dark night in the back of the head and killed. There were no eye witnesses, but the plaintiff claimed that deceased was struck by the tip of a mail hook hanging down on the outside of the mail car of a backing train. Due to the relative heights, the deceased could have been so struck only if he was standing near the track on a mound of cinders where his duties permitted him to be. The Court held that the questions of negligence and proximate cause were properly submitted to the jury.

It will be noted that in each of these cases there was affirmative proof by circumstantial evidence from which the jury might reasonably infer negligence, and that such negligence was the proximate cause of the injury. No such evidence was offered in the instant case.

The fact that the witness whom appellant was compelled to call to prove her case was an employee of appellee did not relieve her from the burden of producing affirmative evidence from which an inference of negligence could be drawn. Appellant cites Zumwalt v. Gardner, 8 Cir., 160 F.2d 298, in which the plaintiff, a switchman, alleged that while he was attempting to get on the footboard of a Diesel engine he was suddenly thrown to the ground by a violent jerk caused by the negligence of the engineer in applying the brakes in emergency. The plaintiff called the engineer as a witness and he denied having made the emergency stop. The Court held that the plaintiff was not necessarily bound by the testimony of the engineer who was a hostile witness. That case is clearly distinguishable from the one before us for decision. There the injured plaintiff himself testified that a sudden stop was made which threw him from the engine; whereas in the instant case there is no evidence of any kind to contradict the engineer in his statement that he stopped because he saw Moore fall. In Eckenrode v. Pennsylvania R. Co., 3 Cir., 164 F.2d 996, affirmed 335 U.S. 329, 69 S.Ct. 91, 93 L.Ed 41, where all the plaintiff's witnesses were employees of the defendant, the Court stated in a footnote that although the plaintiff was not bound by their testimony, yet, "belief that testimony is false will not support an affirmative finding that the reverse of that testimony is true. Plaintiff has the burden of establishing his case by direct or circumstantial evidence; that burden is not met by pointing to the fact that all the available witnesses are hostile, and will not testify in a manner which would support the complaint."

We do not need to decide what might have been the result had appellant actually demonstrated that the engineer could not see Moore in the position the latter occupied on the footboard. We think the evidence, fairly interpreted, shows without contradiction that he *could* see him. Any straightforward witness, if asked whether the figure of a man shown in the photograph alluded to above was "standing up straight", would normally answer "yes", as did the engineer when asked by counsel for appellant if Moore was "standing up straight". It is worthy of note that these were the words of counsel, and not of the witness. They were carefully framed, for no other apparent purpose than to provide an excuse to contradict the engineer's testimony. We are asked to believe that the engineer meant that Moore's body was absolutely perpendicular to the footboard; that it formed a ninety degree angle with it; that a plumb line dropped from the center of his head would touch the footboard midway between his feet. Such verbal gymnastics are not favored in the law. A witness's words will not be given a strained and forced interpretation when they admit of a natural, ordinary, colloquial construction. "Standing up straight" means not slumped forward or sidewise; not crouched down or stooping over; not bent in any direction. Wigmore on Evidence (3rd Ed.), Sec. 780; 58 Am.Juris. 317.

No fact was brought to light which could support an inference that the engineer stopped the train for any reason other than that which he gave in his testimony. The train was moving at a very slow rate of speed; the engineer was alert; the day was fair; the track was clear; the switch was open. Under this evidence the jury's verdict for appellant could have resulted only from speculation and conjecture. Such a verdict cannot be allowed to stand. Pennsylvania R. Co. v. Chamberlain, 288 U.S. 333; 53 S.Ct. 391, 77 L.Ed. 819; Chicago, M. and St. P. Ry. Co., v. Coogan, 271 U.S. 472, 46 S.Ct. 564, 70 L.Ed. 1041. The District Court was clearly right in setting the verdict aside and entering judgment for appellee.

Affirmed.