## MOORE, ADMINISTRATRIX, *v.* CHESAPEAKE & OHIO RAILWAY CO.

No. 318.  Argued January 4, 1951.—Reargued January 10, 1951.—
Decided February 26, 1951.

*Geo. E. Allen* argued the cause and filed a brief for petitioner.

*Meade T. Spicer, Jr.* and *Strother Hynes* argued the cause on the original argument and *Mr. Hynes* on the reargument for respondent.  With them on the brief was *Walter Leake.*

MR. JUSTICE MINTON delivered the opinion of the Court.

This action, brought under the Federal Employers' Liability Act[1] in the United States District Court for the Eastern District of Virginia on behalf of a surviving widow and children, charged negligence against respondent railroad in the death of petitioner's decedent, who was acting in the course of his employment as a brakeman for respondent at the time of his death.  The case was tried before a jury.  At the conclusion of all the evidence, re-

---

[1] 35 Stat. 65, as amended, 45 U. S. C. §§ 51 *et seq.*

spondent moved for a directed verdict on the ground, among others, that respondent was not shown to have been negligent. The District Court reserved decision, pursuant to Rule 50 of the Federal Rules of Civil Procedure, and submitted the case to the jury, which returned a verdict for petitioner. Respondent then renewed its contention by motion for judgment notwithstanding the verdict, which was sustained, and the action was dismissed on the merits. The Court of Appeals for the Fourth Circuit affirmed, 184 F. 2d 176, and we granted certiorari to determine whether the province of the jury had been invaded by the action of the District Court. 340 U. S. 874.

On September 25, 1948, petitioner's decedent was employed by respondent as a brakeman in respondent's switching yards at Richmond, Virginia. The day was fair. At about 3:50 p. m., the crew with which decedent was working undertook its first car movement of the day. An engine and tender were headed into Track 12 and the front end of the engine was coupled onto 33 loaded freight cars which were to be moved out initially upon the straight track referred to as the ladder track. The switch at the junction of Track 12 and the ladder track was properly aligned for the train to pass onto the ladder track. Who aligned the switch does not appear.

Decedent gave the signal for the engine to back out of Track 12 with the cars. It moved out in a westerly direction, with the rear of the tender as the front of the moving train. Decedent was standing on a footboard at the rear of the tender, his back to the tender; the outer edge of the footboard was about ten inches in from the outer edge of the tender and about a foot above the rail. The engineer was in his seat on the same side of the train as the footboard on which decedent was standing. The engineer was turned in the seat and leaning out the side cab window, looking in the direction in which the train

was moving. Decedent's duty as he rode on the footboard was to give signals to the engineer, who testified that he could at all times see the edge of the arm and shoulder of decedent. To be thus seen and in a position to give signals, decedent had to extend outward beyond the edge of the tender, supporting himself partly by a handrail, otherwise the tender, the top of which was eight feet seven inches above the footboard, would have obstructed the engineer's view of him altogether.

The engineer testified that as the train approached Switch 12 at about five miles an hour, having moved ten or twelve car lengths, he saw decedent slump as if his knees had given way, then right himself, then tumble forward in a somersault toward the outside of the track. The engineer testified that he then made an emergency stop in an unsuccessful effort to avoid injuring decedent. The train ran the length of the tender and engine and about a car length and a half before it stopped at a point about an engine or car length past the switch on the ladder track. Decedent died immediately of the injuries received.

To recover under the Act, it was incumbent upon petitioner to prove negligence of respondent which caused the fatal accident. *Tennant* v. *Peoria & P. U. R. Co.,* 321 U. S. 29, 32. The negligence she alleged was that respondent's engineer made a sudden and unexpected stop without warning, "thereby causing decedent to be thrown from a position of safety on the rear of the tender" into the path of the train.

It is undisputed that only one stop of the train was made and that a sudden stop without warning. The engineer was the only witness to the accident and was called to testify by petitioner. He testified that he saw decedent fall from the tender and that he made an emergency stop in an attempt to avoid injuring him. He testified that he received no signal to stop and had no

reason to stop until he saw decedent fall. When his attention was directed to the point, the engineer never wavered in his testimony that decedent was continuously in his view and in a position to give signals up to the time he was seen to fall and the emergency stop was made.

Petitioner attempts to avoid the effect of this by pointing to statements of the engineer which allegedly contradict his testimony that decedent was continuously in his view. Petitioner relies on testimony and measurements of an expert witness, and upon the fact that the jury was permitted to view the engine and tender, to support the alleged contradiction. As a consequence, it is asserted, the jury was entitled to disbelieve the engineer's version of the accident and to accept petitioner's.

True, it is the jury's function to credit or discredit all or part of the testimony. But disbelief of the engineer's testimony would not supply a want of proof. *Bunt* v. *Sierra Butte Gold Mng. Co.,* 138 U. S. 483, 485. Nor would the possibility alone that the jury might disbelieve the engineer's version make the case submissible to it.

The burden was upon petitioner to prove that decedent fell after the train stopped without warning, which was the act of negligence she charged. Her evidence showed he fell before the train stopped. The only evidence which petitioner can glean from this record to support her charge is the engineer's testimony that there was no one around the switch as the train approached it, and that he did not know whether "they" intended to take all of the 33 cars out of the switch at one time, or to stop and cut off some of them.[2] From this it is said a jury might reasonably

---

[2] "Q. Were you going to take all of those thirty-eight [sic] cars out at one time through that switch?

"A. I don't know about that. I work by signals. I don't know whether they intended to put them all out and switch them or to stop and cut part of them off." R. 30.

infer that the engineer decided to make and did make an emergency stop which threw decedent from the tender. However, the engineer's testimony, appearing at the very same page of the transcript as the statement relied on, was that he worked by signals; that he had received no signal to stop or do anything; that in the event he did not receive a signal he would "[k]eep pulling the cars on back" until he received a signal, until he "cleared the switch"—"[p]robably beyond." [3] We do not think that the isolated portion of the engineer's testimony relied on by petitioner permits an inference of negligence when placed in its setting of uncontradicted and unequivocal testimony totally at variance with such an inference.

Hence, all the evidence shows is that decedent fell before the train stopped. If one does not believe the engineer's testimony that he stopped after—indeed, because of—the fall, then there is no evidence as to when decedent fell. There would still be a failure of proof.

To sustain petitioner, one would have to infer from no evidence at all that the train stopped where and when it did for no purpose at all, contrary to all good railroading practice, prior to the time decedent fell, and then infer

---

[3] *Supra,* n. 2;

"Q. Had you received any signal at that time to stop or to do anything—cut off any of the cars?

"A. No, sir, I had not.

"Q. What were you going to do in the event you didn't receive any further signals either from the conductor or from Mr. Moore or from anybody else?

"A. Keep pulling the cars on back until I received a signal.

"Q. And until you cleared the switch, until you cleared No. 12 switch?

"A. Yes, sir.

"Q. You keep——

"A. Probably beyond.

"Q. You keep on going?

"A. Yes." R. 30.

that decedent fell because the train stopped. This would be speculation run riot. Speculation cannot supply the place of proof. *Galloway* v. *United States,* 319 U. S. 372, 395.

Since there was no evidence of negligence, the court properly sustained the motion for judgment notwithstanding the verdict. The judgment is

*Affirmed.*

MR. JUSTICE FRANKFURTER would dismiss this writ as improvidently granted, for reasons set forth by him in *Carter* v. *Atlanta & St. Andrews Bay R. Co.,* 338 U. S. 430, 437. See *Affolder* v. *N. Y., C. & St. L. R. Co.,* 339 U. S. 96, 101.

MR. JUSTICE REED took no part in the consideration or decision of this case.

MR. JUSTICE BLACK, with whom MR. JUSTICE DOUGLAS concurs, dissenting.

The complaint in this case alleged that petitioner's husband, while performing his duties as a railroad brakeman, was thrown from a footboard at the back of a tender and killed as a result of a sudden and unexpected stop made by the engineer. That these allegations, if proved, supported the jury's finding of negligence is not and could not be denied. I have no doubt but that the following evidence was sufficient to justify such a finding and the verdict for petitioner:

Decedent was an experienced brakeman with respondent railroad, having served in that capacity for about seven years. On the day of the accident, his duty required him to ride the footboard on the rear of a tender which was being moved backwards by an engine coupled to 33 loaded freight cars. The engineer testified that he suddenly threw the engine into reverse and made an emer-

gency stop without warning. Decedent's badly broken and mutilated body was found lying beside the track. He had died as a result of his injuries.

Unless we are to require the element of proximate cause to be proved by eye-witness testimony, a reasonable jury certainly could infer from the foregoing facts that the sudden stopping of the engine threw the decedent to his death. Yet the Court apparently ignores this strong circumstantial evidence by relying upon the engineer's testimony that he made the sudden stop after he saw the decedent "somersault" off the tender. Of course, had the jury believed both that the engineer stopped the train abruptly and that he did so at the time he said he did, it would have found for respondent. But as the Court concedes, the jury was not compelled wholly to accept or wholly to reject the engineer's version. It was entitled to credit part of his testimony and discredit the balance, especially since there were noticeable inconsistencies, improbabilities and self-interest in the engineer's story as to how and when the fall occurred. If the jury rejected the statement that decedent fell before the engine stopped, it could find for petitioner on the basis of the circumstantial evidence previously set out.

The technique used today in depriving petitioner of her verdict is to frame the issue in terms of "When did the decedent fall?" and then to hold that petitioner failed to sustain the burden of proof because she introduced no eye-witness evidence on this point.* Such a myopic view loses sight of all the circumstances from which the time and cause of the fall can be inferred. What the record shows is that petitioner tried the case on a theory that

---

*The Court also appears to believe that petitioner should have proved the engineer's purpose in stopping the train so suddenly. But whatever was the engineer's purpose, petitioner was entitled to recover in this case if her husband's death was caused by the sudden, unexpected stop.

decedent's fall resulted from a sudden stopping of the engine, while respondent asserted the theory that the fall was due to a heart attack. Although there was some showing that decedent had been afflicted with heart trouble in the past, respondent failed to produce any evidence that the body when found gave indications of heart disease. The jury therefore quite reasonably rejected respondent's theory for lack of proof. Just as reasonably, it accepted the petitioner's evidence as proving the allegations of her complaint. In my opinion, the taking of this verdict from petitioner is a totally unwarranted substitution of a court's view of the evidence for that of a jury.

I would reverse.