**Fred FERGUSON, Plaintiff-Appellant,**

**v.**

**ST. LOUIS–SAN FRANCISCO RAILWAY COMPANY, a Corporation, Defendant-Respondent.**

No. 45529.

Supreme Court of Missouri,
En Banc.

Nov. 12, 1957.

Rehearing Denied Dec. 9, 1957.

Jo B. Gardner, Sam R. Gardner, Monett, for plaintiff-appellant.

James L. Homire, St. Louis, C. Wallace Walter, Glenn A. Burkart, Mann, Walter,

Powell & Burkart, Springfield, for defendant-respondent.

WESTHUES, Judge.

This is an action brought by plaintiff Ferguson under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., to recover damages in the sum of $65,500 for personal injuries sustained when plaintiff while performing his duties fell into a ditch or water drain. Plaintiff's trial theory was that the defendant failed to furnish plaintiff a safe place to work. At the close of plaintiff's case, the trial court directed a verdict for the defendant and plaintiff appealed.

The case was filed and tried in the Circuit Court of Lawrence County, Missouri. Plaintiff's injuries were sustained about 9:00 a. m., on May 21, 1954.

Plaintiff had been in defendant's employ for many years. For eleven years before his injury, plaintiff had been a lamp tender in the yards at Joplin, Missouri. His duties were cleaning and refueling switchstand lamps. In addition to the duty of keeping the lamps in order, plaintiff, as well as other employees working in and about the railroad tracks, was required to make what was termed a "running inspection" of passing trains. Such an inspection required no more of an employee than to take a position 15 or 20 feet from the tracks and from there look at the train to see if any rods were loose or dragging or if any "hot boxes" were to be seen. Still another duty of plaintiff was to throw a switch when necessary after a train had passed; plaintiff on signal from the train crew would perform this task. This precluded the necessity of stopping the train to permit a member of the crew to throw the switch.

On the morning plaintiff was injured, he was cleaning and refueling a lamp taken from a switchstand at defendant's main line located at the west end of 7th Street overpass in Joplin, Missouri. Plaintiff had taken the lamp apart and laid the parts on a sidewalk which intersected the railroad tracks. Plaintiff was in a squatting position on the sidewalk while performing this task at a point a few feet from the lamp post and about 10 to 12 feet from the tracks. The tracks at this point ran north and south; the sidewalk, extending eastwardly from the tracks, ran in a northeasterly direction. While plaintiff was working with this lamp, he heard a train coming and looking he saw the train about 200 feet or so away. The train was traveling about 10 to 12 miles per hour. Plaintiff arose from his squatting position and acknowledged a signal from the engineer to throw the switch after the train had passed. Plaintiff was then not far enough away from the tracks to make a running inspection of the train so he began moving away from the tracks by stepping backward. He stepped off the sidewalk and into a ditch or water drain about four feet deep at the south edge of the sidewalk. Plaintiff's theory is that defendant was negligent by not having a guardrail at the south edge of the sidewalk.

■ Plaintiff, in oral argument, conceded that the place to clean the lamp was not unsafe; also that the place to make the inspection of the train was not unsafe. But that the combination of the duties, that is, transferring from the duty of cleaning the lamp to that of inspecting the oncoming train, required him to move back to a position from which he could make the inspection; that in so doing, he stepped off into the ditch; that, therefore, the place was unsafe. To this we cannot agree. Plaintiff concedes that he selected the place for cleaning the lamp; that he had never been directed or instructed where to do this work. It was in evidence that plaintiff had been using the sidewalk as a place to clean the lamp at this place for a long time with the knowledge of the defendant. Plaintiff also conceded that he was not directed as to where he should be when making a running inspection of a train; only that he was required to be at a proper distance. In this instance, plaintiff was not required to cross

the ditch in question to arrive at a proper place to make the inspection. In fact, the ditch was not in the direction where plaintiff should have gone. If plaintiff desired to move away from the tracks, he could follow the sidewalk. Furthermore, plaintiff was not required to walk backward.

■ It is a well known fact that all railroad tracks and yards are beset with embankments, drainage ditches, culverts, and other offsets and that it would be impracticable to have guardrails at all of such places for the protection of employees.

Plaintiff relies upon the case of Rogers v. Missouri Pacific Railroad Co., 352 U.S. 500, 77 S.Ct. 443, 447, 1 L.Ed.2d 493, decided by the United States Supreme Court, which court disapproved the opinion by this court in that case (then styled Rogers v. Thompson and reported at 284 S.W.2d 467). This court had held the plaintiff Rogers' evidence was insufficient to establish liability against the defendant. Rogers claimed he had not been furnished a safe place to work. An examination of the opinion will disclose that the circumstances surrounding the manner in which Rogers was injured were quite different from those in the case before us. In the Rogers case, Rogers using a hand torch was burning weeds and other vegetable growth along a railroad track near a culvert; a train which passed fanned the fire which then threatened to engulf Rogers while he was looking at the passing train for hot boxes. To escape the danger, he retreated. Smoke reduced the visibility and in making his escape, Rogers slipped on loose gravel at the slope of the culvert. In holding that the evidence was sufficient to present a question for a jury, the United States Supreme Court said: "We think that the evidence was sufficient to support the jury finding for the petitioner. The testimony that the burning off of weeds and vegetation was ordinarily done with flame throwers from cars on the tracks and not, has here, by a workman on foot using a crude hand torch, *when that evidence is considered with the uncontra-*

*dicted testimony that the petitioner was where he was on this narrow path atop the dirt 'dump' in furtherance of explicit orders to watch for hot boxes,* supplied ample support for a jury finding that respondent's negligence played a part in the petitioner's injury. These were probative facts from which the jury could find that respondent was or should have been aware of conditions which created a likelihood that petitioner, in performing the duties required of him, would suffer just such an injury as he did. Common experience teaches both that a passing train will fan the flames of a fire, and that a person suddenly enveloped in flames and smoke will instinctively react by retreating from the danger and in the process pay scant heed to other dangers which may imperil him. In this view, it was an irrelevant consideration whether the immediate reason for his slipping off the culvert was the presence of gravel negligently allowed by respondent to remain on the surface, or was some cause not identified from the evidence.

"The Missouri Supreme Court based its reversal upon its finding of an alleged admission by the petitioner that he knew it was his primary duty to watch the fire. From that premise the Missouri court reasoned that petitioner was inattentive to the fire and that the emergency which confronted him 'was an emergency brought about by himself.' It said that if, as petitioner testified, the immediate cause of his fall was that loose gravel on the surface of the culvert rolled out from under him, yet it was his inattention to the fire which caused it to spread and obliged petitioner 'to move blindly away and fall,' and this was 'something extraordinary, unrelated to, and disconnected from the incline of the gravel at the culvert.'

"We interpret the foregoing to mean that the Missouri court found as a matter of law that the petitioner's conduct was the sole cause of his mishap. But when the petitioner agreed that his primary duty was to watch the fire *he did not also say that he*

*was relieved of the duty to stop to watch a passing train for hot boxes. Indeed, no witness testified that the instruction was countermanded.* At best uncertainty as to the fact arises from the petitioner's testimony and in that circumstance not the court, but the jury, was the tribunal to determine the fact." (Emphasis ours.)

■ After scrutinizing the opinion of the United States Supreme Court to determine what facts the court deemed sufficient to support a finding of negligence, we are of the opinion that the court must have determined that the fire's being fanned by the passing train combined with the fact that Rogers was required to make an inspection of the passing train placed him in danger and that the defendant railroad could have foreseen such a result. We do not see how the fact that Rogers was furnished with a hand torch to set fires had any bearing on the question of defendant's negligence. Had a flame thrower from a car on the tracks been used, Rogers or some other employee would have been required to be present to watch and control the fire. So, we conclude that if Rogers had been relieved of the duty to be at a point near enough to the tracks to make an inspection of the train, a different result might have been reached. Suppose in the Rogers case a train had passed before Rogers started a fire and Rogers, in order to perform his duty of making an inspection of the passing train for hot boxes, had stepped backward and fallen down an embankment to his injury. Would the railroad have been held liable? We think not. That is the exact situation in the present case. We do not find any evidence in the record to support a finding of negligence on the part of the defendant contributing to plaintiff's injury. Atlantic Coast Line R. Co. v. Craven, 4 Cir., 185 F.2d 176, loc. cit. 178, 179(2) (3) (4), and cases there cited.

Plaintiff cited a number of cases to support his theory. We need not discuss all of them. In Cleghorn v. Terminal R. Ass'n of St. Louis, Mo., 289 S.W.2d 13, the plain-

tiff on a dark night tripped over a black, unlighted switchstand. This court held that the evidence justified a finding that plaintiff had not been furnished a safe place to work. The same ruling was made in Adams v. Atchison, T. & S. F. Ry. Co., Mo., 280 S. W.2d 84, where plaintiff, an engineer, was injured. The negligence relied on was failure of an oncoming train to have a gyrating headlight in operation, causing uncertainty due to such failure and a heavy fog.

In Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610, the court held that every vestige of assumption of risk had been obliterated by the Federal Employers' Liability Act. In Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916, plaintiff's husband had been killed after throwing a switch to permit a train to back into the Grand Central Station at Memphis, Tennessee. Plaintiff's theory was that her husband, a switchman, had been struck on the head by a mail hook hanging loosely on the outside of a mail car of the backing train. The Missouri Supreme Court had reversed a judgment for plaintiff (reported at 354 Mo. 196, 189 S.W.2d 253) on the theory that the evidence was insufficient to sustain a finding that the switchman had been struck by the mail hook. The U. S. Supreme Court held the evidence was sufficient. This court and the U. S. court were in agreement that if the switchman had been struck by the mail hook, such fact supported a finding of negligence.

■ The above cases disclose the rule to be that to support a verdict under the F.E. L.A., there must be present facts from which a jury may infer negligence and that such negligence did play a part in causing the injury complained of. Moore v. Chesapeake & Ohio Railway Co., 340 U.S. 573, 71 S.Ct. 428, 95 L.Ed. 547.

■ We hold that the record in this case is devoid of any evidence from which negligence on the part of the defendant may be

inferred which contributed to cause plaintiff's injuries. The trial court was, therefore, right in directing a verdict for the defendant. The judgment is affirmed.

All concur, except HOLLINGSWORTH, J., who dissents in separate opinion filed.

HOLLINGSWORTH, Judge (dissenting).

I am forced to dissent from the conclusion of the majority that a submissible case was not made. I believe the evidence would support a finding by the jury:

1. that by plaintiff's long use of the sidewalk as a place to clean lamps and defendant's knowledge of and acquiescence in such custom the sidewalk had become and was an established place of work not only for cleaning lamps but also as a point from which plaintiff necessarily would move in the inspection of instantly passing trains;

2. that in moving to make the inspection plaintiff of necessity would make some use of the sidewalk;

3. that the ditch immediately adjacent to the sidewalk was inherently and patently dangerous to any employee using the sidewalk in the prosecution of duties similar to those of plaintiff;

4. that in years gone by a steel guardrail had been maintained at the point where plaintiff fell into the ditch and that it was reasonably feasible for defendant to have continued to maintain a similar device;

5. that, by reason of the premises, defendant was negligent in failing to furnish plaintiff with a reasonably safe place to work; and

6. that defendant's negligence directly contributed to plaintiff's fall and resultant injuries.

I would remand the case for trial on the merits.