**Jack SHOWELL and Dorothy Showell, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 15710.

United States Court of Appeals Ninth Circuit.

April 14, 1958.

wise, particularly in a footnote and again in our memorandum on the petition for rehearing.[2]

To us, untrained but with fair eyesight, the sheet looks like a recapitulation prepared in about three installments. The entries from January 1 to December .7. at least, on the best inspection we can give the document, appear to have been written successively at one sitting with the same sharp but fairly soft pencil. Then, beginning with December 17 and running through December 23, the gains seems to have been written with a sharp, hard pencil, again with the same arresting uniformity of pencil. For December 10, 11 and 12 and December 31, the entries are in ink, apparently the same ink and the same pen.

What strains our credulity to the breaking point is that if this exhibit is accepted as containing contemporaneous entries, we must conclude that Bookie Showell picked up the single yellow loose sheet on January 1 or January 2 and wrote on that day, "Jan 1—3950.00" (a gain); that he then filed the sheet or let it lay around until September 17 or 18, eight and a half months later, and he then picked it up and wrote "Sept 17—882.50" (a loss); and perhaps wrote with the same pencil in the same state of sharpness.

In our prior opinion, we acknowledged it possible that the taxpayer could explain the strange appearance of the document.

This is not the ordinary case of a witness relating an event where his story in its nature is not subject to exact checking. In our judgment the "contemporaneousness" of the entries ought to be capable of proof or disproof. And, if not, that too ought to be susceptible of proof.

We hope that this is not a situation where the Commissioner and about four other agencies have taken the view that looking into the document is all someone else's business.

McLane & McLane, W. Lee McLane, Jr., Phoenix, Ariz., for appellants.

John N. Stull, Acting Asst. Atty. Gen., Theodore Taubeneck, Lee A. Jackson, Robert N. Anderson, Marvin Weinstein, Attorneys, Department of Justice, Washington, D. C., for appellee.

Before HEALY, POPE and CHAMBERS, Circuit Judges.

CHAMBERS, Circuit Judge.

This court appreciates that it is not a trial court. But it is sorely troubled with Showell's Exhibit 3, the only bookkeeping record[1] ever produced by him for the agents of the Commissioner or before the Tax Court as representing his income for the year 1949.

The exhibit is an accountant's sheet of yellow work paper. In the first column are dates. The second column is entitled "gain" and the third column "loss." The entries for 22 days indicate gain. The entries for 15 days indicate loss.

The document, per se, has not been directly attacked at any stage. In our former opinion we questioned it slant-

---

1. Showell did produce cancelled checks for three items of overhead expense and two "bad checks" given him by a customer.

2. Showell v. Commissioner, 238 F.2d 148.

We remand the case to be reopened by the Tax Court to receive further evidence. Particularly the authenticity of Exhibit 3 should be a subject of inquiry. It should set aside its findings and decision.

Remanded.

POPE, Circuit Judge (dissenting).

My objection to the proposed disposition of this case as stated in the majority opinion is that I believe it cannot serve any useful purpose in view of the findings which the Tax Court has now made and from which I assume it will not find any reason to withdraw. I, too, have had a look at the handwriting on Exhibit 3. I am no handwriting expert, but I doubt that such an expert would be able, on the basis of the writing itself, to testify that most of the entries were made at one sitting. The rather uniform precision shown could well be characteristic of the careful writer whose handwriting is usually uniform in style and appearance. I think no possible finding on the points now referred back to the Tax Court can determine the outcome here.

The Tax Court after remand has now found that "the petitioner did not keep regular, adequate and permanent books and records of his handwriting transactions."[1] This is elaborated in the Tax Court's opinion where it adds that "Aside from Exhibit 3, the petitioner maintained no account or record with respect to money received by him in his betting transactions or the sums paid out to winning bettors during the year." This means that the Tax Court has found in substance that the taxpayer's method of keeping his accounts "does not clearly reflect the income" within the meaning of § 41 of the 1939 Internal Revenue Code, 26 U.S.C.A. § 41.[2]

Under those circumstances the computation of the income is required to be made "in accordance with such method as in the opinion of the Commissioner does clearly reflect the income." No such method has been employed by the Commissioner, for according to the Tax Court's opinion, there was no existing adequate basis on which to apply any method of reconstructing the petitioner's income as required by § 41. It seems to me that a fair construction of § 41 would require an approval of the statement in Bradstreet Co. of Maine v. Commissioner of Internal Revenue, 1 Cir., 65 F.2d. 943, 945, respecting a corresponding section of an earlier statute that: "The burden to adopt a method that will clearly reflect the income is on the Commissioner equally as well as on the taxpayer."

I believe it is fair to say that if the Commissioner performed his duty under § 41, he might make assessments, based upon other available evidence, which would be sustained provided they were not arbitrary or unreasonable. Cf. Schira v. Commissioner, 6 Cir., 240 F.2d 672. But surely any method adopted by the Commissioner must be properly calculated to reflect the taxpayer's income.

Let us suppose then that under the present remand to the Tax Court the court calls for handwriting experts, examines Exhibit 3, and then makes a finding that it does not believe the testimony which the witnesses gave as to how that exhibit was made up. (The Tax Court believed that testimony when it wrote its first opinion and there recited the pro-

---

1. I disagree with this for the reasons stated in my former dissent.

2. "§ 41. General rule—The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer: but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. If the taxpayer's annual accounting period is other than a fiscal year as defined in section 48 or if the taxpayer has no annual accounting period or does not keep books, the net income shall be computed on the basis of the calendar year."

cedure followed in making the entries.) But if under the mandate of this court the Tax Court finally arrives at a finding that Exhibit 3 is a falsification, the question is where does that leave the case? Plainly it leaves the Commissioner still facing his unperformed duties under § 41.

It is elementary that a disbelief of a witness' testimony does not serve to supply evidence that is simply not to be found in the record. "But disbelief of the engineer's testimony would not supply a want of proof." Moore v. Chesapeake & O. R. Co., 340 U.S. 573, 576, 71 S.Ct. 428, 430, 95 L.Ed. 547. "Nor can the district judge's disbelief of petitioner's story of his motives and fears fill the evidentiary gap in the Government's case." Nishikawa v. Dulles, 78 S.Ct. 612, 617. The case of Dyer v. MacDougall, 2 Cir., 201 F.2d 265, 269, is a reasoned explanation of why this is so. There Judge Hand was commenting upon the fact that many things might convince a judge that a witness' testimony was not only false but that "the truth is the opposite of his story",[3] yet the court went on to say that in that situation a disbelief of a witness' story is no substitute for required proof of what the facts are. In that case the court held there was a fatal lack of available proof simply because there were no witnesses available to testify as to the facts alleged.

A finding here that Exhibit 3 was something contrived would leave the record more naked than ever of proof as to what the income actually was.

All this points up the further error of the Tax Court in refusing to allow the petitioner to introduce evidence disclosing his net worth and disbursements. If the books and records kept are inadequate then not only should petitioner have been allowed to go into the net worth proof but the Commissioner was obliged himself to produce that or some other evidence under the requirement of § 41 so as to furnish and supply a method of proof which would "clearly reflect the income."

---

**3.** "Moreover, such evidence may satisfy the tribunal, not only that the witness' testimony is not true, but that the truth is the opposite of his story; for the denial of one, who has a motive to deny, may be uttered with such hesitation, discomfort, arrogance or defiance, as to give assurance that he is fabricating, and that, if he is, there is no alternative but to assume the truth of what he denies."