Ira BRUNET, for the Use and Benefit of his minor son, Daniel Brunet, Plaintiffs,

v.

P. F. HARRIS MANUFACTURING COMPANY, and United States Casualty Company, Defendants.

Civ. A. No. 9214, Division "B".

United States District Court
E. D. Louisiana,
New Orleans Division.

Oct. 12, 1962.

Donald V. Organ, Brumfield & Organ, New Orleans, La., for plaintiffs.

Stanley E. Loeb, Loeb & Livaudais, New Orleans, La., for defendants.

FISHER, District Judge.

The minor plaintiff, Daniel Brunet, through his father, Ira Brunet, instituted this action for damages against P. F. Harris Manufacturing Company and its product liability insurer, United States Casualty Company, for injuries alleged to have been caused by the ingestion of poisonous tablets manufactured by P. F. Harris Manufacturing Company, and commonly known as "Harris Famous Roach Tablets."

This Court having previously granted P. F. Harris Manufacturing Company's motion to quash summons, the United States Casualty Company remains as the only defendant, and for brevity will be referred to as Insurer hereinafter. The minor plaintiff is the son of parents of most moderate means who have a number of other children, all living in a three-room house in Dulac, a small town in Louisiana.

In the early morning of July 20, 1958, the minor plaintiff, Daniel Brunet, nine months old, became ill with convulsions and was taken to Terrebonne General Hospital, Houma, Louisiana. The diagnosis at the time of admission was bilateral ostitis media and febrile focal convulsive disorder. A later diagnosis of encephalitis, cause unknown, was made. He was released from the Terrebonne General Hospital and admitted to the Charity Hospital in New Orleans, July 25, 1958, in a semi-comatose state with fixed pupils and many convulsive seizures. In the Charity Hospital, his illness continued and a double mastoidectomy operation was performed July 30, 1958. On this date, a urine specimen was submitted to the Coroner's Office, Parish of Orleans, which examination resulted in a positive finding of Thallium, a highly toxic poison. A retrospective review of young Daniel's history indicated that he could have ingested roach powder and the doctors at

Charity Hospital requested the parents of Daniel to search their home and the home of Mrs. Lillian Buquet, Daniel's grandmother, for anything that would appear to be poisonous. This search was made by the witness, Joyle Voisin, and the father, Ira Brunet, around July or August, 1958, and in the words of the witness, "to help Ira Brunet locate for something that maybe Baby had et and got sick, you know." As a result of the search, a half-full package of "Harris Famous Roach Tablets" was found on top of the kitchen safe and one tablet on the floor in the Brunet home. In addition, some roach tablets and powder were found in the home of Mrs. Lillian Buquet, the grandmother in whose home Daniel was visiting at the time he became ill.

After collecting the roach tablets and powder from the Brunet and Buquet homes, Ira Brunet gave a portion of the roach tablets to a Mr. Hebert of the Terrebonne Parish Health Unit in Houma, Louisiana, and gave the remainder of them to the Charity Hospital. It has not been shown by the evidence what ultimately became of the powder found in Mrs. Buquet's home; neither is there any evidence as to the identity of the powder that it may be traced as a product of Harris Manufacturing Company.

Of the tablets given to Charity Hospital, one tablet from the Brunet home and one tablet from the Buquet home, both without labels, was submitted to the toxicological laboratory of the Coroner's Office July 31, 1958, and the chemical analysis report dated August 1, 1958, showed the presence of Thallium in both specimens.

The tablets in the possession of Mr. Hebert of the Terrebonne Parish Health Unit were examined by the Louisiana State Department of Health. One white compressed tablet, without a label, found in the Buquet home, contained Boric Acid, but no Thallium compounds were detected. The samples found in the Brunet home were in a yellow cardboard box labeled, "Harris Famous Roach Tablets. Active Ingredient, Boric Acid 40%; Inert Ingredients 60%. Net Wt. 2 Ozs.

P. F. Harris Manufacturing Co., 624 E. Washington Ave., North Little Rock, Arkansas", which contained forty-one compressed tablets of light tan color. The chemical analysis of these tablets revealed Boric Acid to be present, but no Thallium compounds were detected. In passing, we would comment that since these tablets were taken from the same container, it is rather strange that the test results would be different.

After the above tests were run on the tablets, spinal fluid from young Daniel's body was examined by the Coroner's Office and found to be positive for Thallium.

The Charity Hospital notes for November 1, 1958, reveal that Daniel appeared markedly mentally retarded and has spastic quadriplegia. He was discharged from Charity Hospital on November 28, 1958, and subsequently placed in the Home for the Incurables in the City of New Orleans, where he is presently confined.

In brief, the plaintiff contends that Daniel Brunet ingested tablets manufactured by the P. F. Harris Manufacturing Company; that the tablets so ingested contained Thallium; that Daniel Brunet suffered Thallium poisoning as a result thereof; and that the P. F. Harris Manufacturing Company was negligent in (1) failing to warn of the presence of Thallium or other poisons in the tablets; (2) allowing Thallium to get into the roach tablets; (3) failing to inspect the ingredients used in the roach tablets; (4) failing to properly inspect its premises to eliminate the possibility of Thallium or other poisons getting into the roach tablets, or (5) deliberately putting Thallium in the roach tablets to increase their effectiveness. The Insurer answered, denying each and all of such allegations.

The issues to be decided by this Court are: (1) did Daniel Brunet actually ingest a roach tablet or tablets; (2) if so, did the roach tablet or tablets contain Thallium; (3) did Daniel Brunet suffer from Thallium poisoning; (4) was the roach tablet or tablets ingested by Daniel Brunet, if any, manufactured by the P.

F. Harris Manufacturing Company, and (5) if so, was the P. F. Harris Manufacturing Company negligent by intentionally or negligently contaminating the roach tablet or tablets with Thallium.

There is serious doubt as to the sufficiency of the evidence to justify findings favorable to the plaintiff on any of these issues, and in doing so, the Court is having to rely largely on inferences. However, the Charity Hospital records on Daniel Brunet and the evidence presented sufficiently support a diagnosis of Thallium poisoning.[1] Also, the report of Dr. Paddison, to which counsel for both plaintiff and defendant have made much to do about, is accepted by this Court as a positive finding of Thallium poisoning, in that, the doctor concludes that, "The most likely diagnostic possibility was that of Thallium poisoning"; and the Court is of the opinion that Daniel Brunet did suffer from Thallium poisoning, even though many of the features which are typical of Thallium poisoning are not present in this case, such as loss of hair or alopecia, ptosis, signs of kidney involvement, conjunctivitis, or lymphocytosis in the hemogram.

The first inference the Court must make is that the minor, Daniel Brunet, actually ingested a roach tablet or tablets. Of course, no one saw, nor did anyone pretend to have seen Daniel ingest a roach tablet or tablets, but the Court can logically infer that Daniel did ingest one or more roach tablets since it is the fact that the Coroner's Office found Thallium to be present in its chemical analysis of the tablets recovered from the Brunet home, and further, a positive finding of Thallium was found in the urine and spinal fluid specimens of Daniel Brunet. The defendant offers no evidence to refute the roach tablet source of Thallium poisoning; the only factor that could arouse suspicion was the general insanitary living conditions (rodents, roaches and vermin) of surrounding environs. There is, of course, a big discrepancy in the results of the two laboratory tests, that is, the tests made by the Coroner's Office and the one made by the Louisiana State Department of Health. The evidence is undisputed that the specimen tablets used by the two laboratories were removed from the Brunet and Buquet homes at the same time and the tablets taken from the Brunet home were from the same container which was a yellow cardboard box labeled, "Harris Famous Roach Tablets", P. F. Harris Manufacturing Company, 624 E. Washington Avenue, North Little Rock, Arkansas. It is unexplainable to this Court why the test results would be different and we can only infer that some of the tablets taken from the Brunet and Buquet homes contain Thallium, but others did not. Further, since the witnesses for the plaintiffs have testified that all of the roach tablets which were found in their homes were purchased from the Breaux Grocery Store in Dulac, Louisiana, and the defendant has not been able to refute this testimony, we would infer that the roach tablet or tablets ingested by Daniel Brunet were manufactured by the P. F. Harris Manufacturing Company. Now, having found from the evidence that the minor, Daniel Brunet, is suffering from Thallium poisoning, and that Thallium poison was found in roach tablet or tablets manufactured by the P. F. Harris Manufacturing Company and that such tablet or tablets were ingested by Daniel Brunet, we come to the most important determination and that is, was the P. F. Harris Manufacturing Company negligent by intentionally or negligently contaminating the roach tab-

1. "Whenever a certified copy of the chart or record of either of the charity hospitals of this state and any of the veterans hospitals in the state of Louisiana, signed by the director, assistant director, superintendent or secretary of the hospital in question, is offered in evidence in any court of competent jurisdiction, it shall be received in evidence in such court, as prima facie proof of its contents, provided that the party against whom the said record is sought to be used shall have the right to summon and examine those making the original of said record as witnesses under cross-examination." LSA–Rev.Stat. 13:3714.

let or tablets with Thallium? The plaintiff cites the law on the duty of a manufacturer of a product and with the authorities cited, we agree, but to support plaintiff's theory, we would have to infer that the P. F. Harris Manufacturing Company substituted Thallium for some other ingredient in regard to the tablet or tablets involved, or that the P. F. Harris Manufacturing Company permitted the tablet or tablets involved to become contaminated with Thallium in some other manner, and to make such a finding, we would be substituting speculation and inference for proof.[2] It was said in the Galloway case that "inference is capable of bridging many gaps, but not in these circumstances, one so wide and deep as this."

The uncontroverted proof in this case is that the P. F. Harris Manufacturing Company maintained its place of business in North Little Rock, Arkansas at 624 East Washington Street from December, 1948, until January, 1953, when it moved to its present address at 101 West Eighth Street, North Little Rock, Arkansas. All roach tablets manufactured and distributed by the P. F. Harris Manufacturing Company prior to March or April, 1953, were packaged in boxes labeled with the 624 East Washington Street address imprinted thereon. After March or April, 1953, all roach tablets manufactured and distributed by the P. F. Harris Manufacturing Company were packaged in boxes labeled with the 101 West Eighth Street address.

The Brunets and Mrs. Buquet testified they had purchased all roach tablets used in their homes from a grocery store in Dulac, Louisiana by the name of Breaux. The roach tablets found in the Brunet home were in a P. F. Harris Manufacturing Company box bearing the Washington Street address. No box was found at the Buquet residence, only the tablets.

In addition to the chemical analysis tests performed by the Coroner's Office and the Louisiana State Board of Health, the Shilstone Testing Laboratory of New Orleans examined some of the Harris Famous Roach Tablets which were purchased by an adjuster for the Insurer from the Breaux store the latter part of 1958, using a semi-quantitative spectrographic test. The label on the box containing these tablets was identical to the label on the box found in the Brunet home containing the Harris Famous Roach Tablets. The chemical examination by Shilstone revealed no Thallium to be present.

From the evidence presented, whatever Harris Roach Tablets purchased by the Brunet or Buquet families from the Breaux store were manufactured and distributed by the P. F. Harris Manufacturing Company prior to 1953 and were out of the possession and control of said manufacturer for more than five years before the date of Daniel's illness on July 20, 1958. Further, the evidence reflects no Thallium was ever purchased and included as an ingredient by the P. F. Harris Manufacturing Company in its products. All of the facts create a situation that would make it unlikely that Thallium poison was found in the P. F. Harris Manufacturing Company tablets at the time they were manufactured or distributed.

Therefore, it is the Court's opinion that the roach tablets manufactured by the P. F. Harris Manufacturing Company, which are alleged to have caused the illness of Daniel Brunet, were not contaminated with Thallium at the time they were manufactured and distributed, and if in fact, Daniel Brunet did ingest a Harris Roach Tablet containing Thallium, said tablet or tablets were not intentionally or negligently contaminated with Thallium by the P. F. Harris Manufacturing Company, but were contaminated by some force beyond the possession and control of the P. F. Harris Manufacturing Company, for which the Insurer herein cannot be held responsible.

The plaintiff has the burden of establishing liability on the part of defendant from a preponderance of the evidence,

2. Galloway v. United States, 319 U.S. 372, 63 S.Ct. 1077, 87 L.Ed. 1458.

and in view of all testimony most favorable for the plaintiff, we are forced to conclude that the plaintiff has failed to discharge his burden to a legal certainty.[3] Therefore, judgment is to be rendered for the defendant, with costs of Court to be paid by the defendant.

---

3. Theriot v. Mercer, 5 Cir., 262 F.2d 754, cert. den. 359 U.S. 983, 79 S.Ct. 941, 3 L.Ed.2d 933 and 360 U.S. 914, 79 S.Ct. 1293, 3 L.Ed.2d 1263. Galloway v. United States, 319 U.S. 372, 63 S.Ct. 1077, 87 L.Ed. 1458. Moore v. Chesapeake & Ohio Railway Co., 340 U.S. 573, 71 S.Ct. 428, 95 L.Ed. 547.