Aaron Greenfeld v. Petitioner.
Greenfeld v. Commissioner
Docket No. 5622-64.
United States Tax Court
T.C. Memo 1966-83; 1966 Tax Ct. Memo LEXIS 201; 25 T.C.M. (CCH) 471; T.C.M. (RIA) 66083; April 20, 1966
*201 Martin B. Greenfeld, 200 E. Lex., Baltimore, Md., for the petitioner. Charles F. T. Carroll, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined deficiencies in petitioner's income taxes and additions to tax as follows: Additions to Tax
Sec. 6653(a),
Year
Deficiency
I.R.C. 1954
1960
$4,086.81
$204.34
1961
5,245.20
262.26
1962
2,611.06
130.55 Petitioner has conceded a $300 mathematical error in the computation of his income for the year 1961. There are two issues for decision: (1) Is petitioner entitled to any claimed gambling losses for the years 1960 through 1962? (2) Is petitioner liable for the additions to tax under section 6653(a), Internal Revenue Code of 1954, due to negligence or intentional disregard of rules and regulations? Findings of Fact Some of the facts were stipulated by the parties and are hereby found accordingly. Aaron Greenfeld (hereinafter called petitioner) resides in Baltimore, Maryland, and during the taxable years 1960, 1961 and 1962 filed his Federal income tax returns with the district director of internal revenue, *202 Baltimore, Maryland. Since 1952 the petitioner's sole occupation has been that of wagering on horse races. During the years here involved he wagered on horses at various race tracks such as Bowie, Laurel and Pimlico in Maryland and at Delaware Park in Delaware. Each time the petitioner visited a race track to wager he purchased a program and entered in it the amounts won or lost on specific races. When he returned home, petitioner would "net" the daily wins and losses and enter the result on master sheets which he kept for each month of the racing season. [1] Except for the months of February and March, 1960, these master sheets were prepared at the beginning of each month. Petitioner would show on each sheet the year and month involved, list the individual racing days down the left side of the page and have two columns, marked "win" and "lose." Most of the entries in the win and lose columns were made on a day-to-day basis, although some of the sheets bear entries in these columns that were made consecutively. The petitioner did not offer in evidence any of the daily programs on which the results of his betting activity were initially entered. He presented no evidence of individual *203 wagers, the amounts thereof, the horses involved or any loss tickets. Racing was canceled because of inclement weather at Bowie race track on February 25 and on March 3, 4, 5, 7, 8, 10 and 11 and at Pimlico race track on December 12 and 13 in 1960. Racing was also canceled at Laurel race track on March 6 and 7 in 1961. None of these dates appear on petitioner's master sheets. Petitioner is single, has no dependents and during the years 1960 through 1962 lived in a single room in a Baltimore hotel. His average annual living expenses for the years in issue were $3,075, which is about $500 in excess of his average reported income for Federal tax purposes from wagering and a disability pension. The difference between petitioner's income and his expenses was provided by personal loans from his brother. During the years 1960, 1961 and 1962 the petitioner did not own an automobile, had no assets pledged to *204 others, had no bank accounts, life insurance policies or real estate. His assets then consisted of personal clothing, $700 in cash and 200 shares of common stock purchased for $1,800 with money borrowed from his brother. Between the years 1952 and 1959 the petitioner's income tax returns were audited by the respondent in 1954 and again in 1957. On these occasions the respondent's agents inspected petitioner's records but did not disallow the figures shown in the "lose" columns. Petitioner was not told to keep his records in a different fashion. However, in 1963, the respondent informed the petitioner that he should keep more detailed records showing the name of the horse wagered on, the amount bet, and the resulting win or loss. He was also told that he should retain his losing tickets. In preparing his Federal income tax returns for the years in issue, petitioner added all the figures in the "win" columns of his monthly master sheets and subtracted the total of the figures in the "lose" columns. He reported the remainder as income for each year involved. Respondent disallowed all the claimed daily net losses and only allowed the losses entered into petitioner's computation of *205 net "win" days. The disallowed deductions for "gambling losses" were $13,688 in 1960, $15,657 in 1961, and $9,894 in 1962. Petitioner incurred losses in his wagering transactions of $10,266 in 1960, $11,743 in 1961, and $7,420 in 1962. Opinion Petitioner first contends that the respondent is estopped from disallowing the daily net losses because he has tacitly approved petitioner's method of recordkeeping by failing to suggest that any changes were necessary during the 1954 and 1957 audits. There is no merit in this contention. Mere acquiescence in a taxpayer's treatment of an item in prior years does not prevent the Commissioner from attacking such treatment in later years. South Chester Tube Co., 14 T.C. 1229, 1235 (1950); Caldwell v. Commissioner, 202 F. 2d 112, 115 (C.A. 2, 1953); Laura Massaglia, 33 T.C. 379, 386-387 (1959); and Barry Meneguzzo, 43 T.C. 824, 836 (1965). Accordingly, the respondent is not estopped from asserting these deficiencies. We think this case is particularly suited to an application of the so-called Cohan rule (39 F. 2d 540). Petitioner testified in a candid and forthright manner *206 about his wagering activities and his method of recording his wins and losses. His testimony was fortified by a statement of his net worth which stands uncontroverted in the record. The respondent, however, introduced the expert testimony of a document examiner for the United States Treasury Department who examined all the master sheets. He stated that a few bore win and loss entries made consecutively (not necessarily on a day-to-day basis) while the majority were completed on a day-to-day basis. [2]
On the evidence presented we believe the petitioner did sustain losses in excess of those allowed by the respondent. This Court is competent to determine the extent of such losses under the approximation rule laid down in Cohan v. Commissioner, 39 F. 2d at p. 544. See also Jack Showell, 23 T.C. 495 (1954), reversed on other grounds 238 F. 2d 148 (C.A. 9, 1956), on remand T.C. Memo. 1957-22 (January 31, 1957), reversed on other grounds, 254 F. 2d 461 (C.A. 9, *207 1958), on second remand T.C. Memo. 1960-7 (January 29, 1960), affd. 286 F. 2d 245 (C.A. 9, 1961). The facts of this case are close to those in Herman Drews, 25 T.C. 1354 (1956). There, as here, the record indicated that the taxpayer was a truthful and candid witness who in fact sustained substantial net losses over those allowed by the Commissioner. In applying the Cohan rule, we allowed Drews a net gambling loss of $2,400 compared to $3,140 claimed in his tax return. On the authority of Showell and Drews, we have likewise applied the Cohan rule here and found that the petitioner sustained losses in the amounts set forth in our Findings of Fact. Respondent argues that the petitioner's records do not substantiate these losses because they are merely summaries of daily entries that were destroyed long ago and, without the support of the daily racing program entries, we lack sufficient evidence upon which to make a Cohan determination. In support of his argument the respondent cites Plisco v. United States, 306 F. 2d 784 (C.A.D.C., 1962) and Stein v. Commissioner, 322 F. 2d 78 (C.A. 5, 1963), affirming a Memorandum *208 Opinion of this Court. In these circumstances we regard the respondent's reliance on Plisco and Stein as misplaced. In each of those cases a refusal to apply the Cohan rule was upheld in factual situations differing significantly from those in this case. In both Plisco and Stein the taxpayers relied solely on their summarized accounting records in attempting to carry their burden of proof. This petitioner, on the other hand, has supported his summary records with proof of his net worth. In both Plisco and Stein the reliability of the taxpayers' testimony was questionable and the accounting records were found on the whole to be unreliable. Here, by contrast, the petitioner has impressed us with his candor and veracity in such a way as to lend credence to the substantial authenticity of his summary records. Our impression in this respect is borne out to some extent by the testimony of respondent's own expert witness. Hence, on the facts alone, we find the Plisco and Stein decisions distinguishable. Moreover, to accept respondent's position would require us to read into those two cases something which is not there, namely, a prohibition against the exercise of our own judgment in such *209 cases in the light of the evidence adduced at trial. It is for us to decide what effect should be given to the petitioner's records which, of course, depends on the facts and circumstances of each case. While we agree generally with the statements made in Plisco and Stein that taxpayers should not be permitted to profit from their inexactitudes, we cannot agree with respondent that these cases create an absolute rule of law converting a basically factual question into a mandatory prohibition against the use of the Cohan rule where the only available data are summary statements rather than records of original entry. Suffice it to say that whatever possible defects these summary records might contain, we will not use them to deny completely the gambling losses claimed by petitioner. In view of our findings with respect to the losses incurred and the summary records kept by petitioner, we hold that he did not intentionally disregard the rules and regulations of the Commissioner, nor was he negligent. Consequently, he is not liable for the additions to tax under section 6653(a). To reflect the conceded adjustments for 1961 and the determinations made herein, Decision will be entered *210 under Rule 50. Footnotes
1. The months of October and November of each year were combined on a single sheet. No master sheets were prepared for the months of January and August in 1960 and 1962 or for the month of September in all three years because the petitioner placed no wagers during such months.↩
2. As to some of the sheets, the expert expressed no conclusive opinion because he felt there were not enough individual entries upon which to form a judgment.↩