**Paris THERIOT, Appellant,**

v.

**Mrs. Wanda MERCER, Appellee.**

**No. 17214.**

United States Court of Appeals
Fifth Circuit.

Jan. 23, 1959.

Robert G. Hughes, New Orleans, La., for appellant.

H. Alva Brumfield, Baton Rouge, La., for appellee.

Before HUTCHESON, Chief Judge, and CAMERON and WISDOM, Circuit Judges.

HUTCHESON, Chief Judge.

Appealing from a judgment on a verdict in a suit for damages for the death of plaintiff's husband, defendant is here confidently insisting that, for the reasons put forward by him in his brief,[1] the

---

1. These are in substance:

Evidence was not offered to prove that decedent received the injuries from which he died as a result of being struck by defendant's automobile.

Neither the time nor the place decedent sustained the injuries was shown.

The only pertinent fact in evidence was that decedent's body was found alongside the road on the day following the time

court erred in denying his motion for an instructed verdict made at the close of plaintiff's case and repeated at the close of the evidence.

In the alternative he urges upon us that, in the conduct of the case, errors of omission and commission occurred which, permitting the case to go out of bounds, require reversal. Upon the considerations and for the reasons hereafter stated, we find ourselves in substantial agreement with these views.

In Maryland Casualty Co. v. Reid, 5 Cir., 76 F.2d 30, this court, as preliminary to disposing of the question for decision there, whether the trial had been attended with reversible error, carefully examined and as carefully showed forth the intensely dramatic nature and atmosphere of a jury trial and how it affects the actors in it, the witnesses, the lawyers, the litigants, the triers themselves—judge and jury. Pointing out that many verdicts in closely contested civil and criminal cases find their real spring in the atmosphere generated in and by the trial, where things felt but unseen, sometimes real, sometimes illusory, arising out of but more than the relevant and admissible evidence, in the end more influence the verdict than the relevant testimony itself does, the opinion, declaring that in a federal court, in a jury trial, it is the judge who is charged with full responsibility for its just outcome, then went on to say:

> " * * * Because these things are so of jury trials, it is of the genius of our institutions that they be conducted under the firm and steady guidance of judges as administrators, who having minds trained and personalities adequate to the task, are held primarily responsible for their just outcome.[2] Because these things are so, in a federal court at least, the conduct of jury

trials is largely confided to the District Judge, who is expected to have and exercise trial skill of the highest order, and a wise and just discretion. *His chief function, his primary object, is to keep the case within legal bounds by admonitions and rulings from its beginning to its end. He uses the rules of evidence as means, not ends, to elicit and confine the case to the best evidence available in order to bring the truth to light. Trained in the principles and problems of proof, knowing how to value the pertinent, to reject the impertinent, he uses other trial rules to accomplish the same end. Nor does his function as an overseer, superintendent, and administrator of the trial end with its ending.*

"At common law and by statute, the federal District Judge is charged with the duty of granting a new trial in a jury case where, in his opinion, it went unjustly and injuriously out of bounds. This court, as to law cases, is a court of errors. We do not retry the case. We review the record made in it for reversible error, error by the judge, in conducting or failing to conduct the trial, which has, by permitting the case to get out of bounds, prejudiced the just result. * * *"

"*Ordinarily*, if his counsel fails to adequately object, or fails to except to adverse action on his objection, a litigant may not complain of what occurred as error, for he will be treated as having assented to it. *On the other hand, a trial judge may never abdicate his function, or surrender to counsel the conduct of the trial. It is still his primary duty to oversee and conduct it. Because this is so, he may, and if he fails to, the appellate court may, though no objection is made and no*

---

when defendant's vehicle and other vehicles passed the place where he was later found, and the evidence was insufficient to warrant submission of the case to the jury.

No evidence was offered of negligence of defendant.

The burden of proof is on plaintiff to prove negligence, not on defendant to disprove it.

*exception taken, correct an error of abdication which has resulted unjustly, by voiding the trial.* But this will be done only in extreme cases, where the judge's error in permitting the trial to get out of bounds, instead of exercising his function to guide and control it, *is of such transcendent influence on the course of the trial as that, though not excepted to, justice requires its being* noticed and corrected. * * *

*2.* 'The judge is primarily responsible for the just outcome of the trial. He is not a mere moderator of a town meeting, submitting questions to the jury for determination, nor simply ruling on the admissibility of testimony, but one who in our jurisprudence stands charged with full responsibility.' Patton v. Texas & P. Ry. Co., 179 U.S. 658, 661, 21 S.Ct. 275, 276, 45 L.Ed. 361."

At pages 32–33. (Emphasis supplied.)

This case at once precisely illustrates and perfectly proves the truth and wisdom of what was there said. Originating in and bolstered by an atmosphere of rumor and intrigue, heard on inadmissible and inflammatory evidence and presented to the jury with the use of trial tactics equally inadmissible and inflammatory, which except in one glaring instance[2] went unrebuked and unrestrained, the case was tried in a melodramatic atmosphere and setting of suspicion and prejudice in and by which trifles light as air were made to seem confirmations strong as proofs of Holy Writ. Thus tried, it was submitted to the jury on a record so replete with instances of things done which ought not to have been done and of things left undone which ought to have been done as to require the holding here that defendant was deprived thereby of that fair

trial to which, in a federal court at least, every person accused of fault is by law entitled.

 The appellant, citing many instances in point, does indeed on page 11 of his brief courteously acknowledge "that the trial court attempted to protect defendant from speculative inadmissible and improper conclusions and opinions, but sufficient inadmissible evidence went into the record, and the damage was done with the jury". He, however, fails to point out many other instances of even greater moment where, due to the inaction of the trial judge, the trial went completely out of bounds as a trial to become a hue and cry. Without undertaking to point them all out, it is sufficient to say that one of the most grievous of them was the court's permitting a witness to be asked whether there had been a pay-off in the case and to answer that he had heard that there was. From then on, it is quite clear that the trial took on its cloak and dagger aspect of political intrigue and scandal, and the real issue, whether the defendant's car had struck the deceased and whether, if so, the defendant was negligent, was lost to view, indeed disappeared from the case.

We, therefore, agree with the appellee's statement on page 6 of her brief that, although the defendant denied making a pay-off or giving any political contribution to the sheriff in the sheriff's race that was going on at that time (and nobody gave testimony to the contrary), the jury nevertheless convicted Theriot of making such a pay-off. Indeed it was the admission of this wholly inadmissible and highly prejudicial hearsay testimony, the introduction of which should have caused a mistrial, which changed the case from a suit for damages into an inquisition into fraud and wrong doing in the sheriff's office, a matter which, in the state of the evidence, had nothing to

---

2. This was a proffer by plaintiff of proof that many years before Theriot had been involved in two fatal accidents, having no connection with or relation to the one charged here, which was met by the statement of the court that such proof was inadmissible and that if it came in from any witness in any way the court would immediately order a mistrial.

do with the case and could have had no effect on it except the unlawful one of depriving the defendant of a fair trial on the charge of negligence made but not proven.

■ But this is not all. Recognizing throughout the trial the lack of probative evidence and undertaking to supply it by appeals to passion and prejudice, plaintiff's counsel began the trial with an inflammable opening statement in which, assuming as an established fact, a fact which he neither alleged nor proved, that defendant was a hit and run driver, he accused the defendant of being one, and on the basis of this accusation he in effect testified to the jury that it *was his conclusion, and that of the officers who would testify for the plaintiff, that Theriot was a hit and run driver.*[3]

■ In the same inflammatory way and without a single syllable of evidence on which to base it, counsel for appellee, in his argument, declaring "He had a complete disregard for this man's life", charged in effect that the defendant was a murderer. Equally inadmissible and inexcusable was his appeal to the passions of the jury, that it should not hesitate to find defendant guilty of negligence since defendant had a policy to pay the liability for him, while in the same breath he told the jury, though all the testimony was to the contrary, that defendant sold his business to his brother to escape liability and this was an admission of his guilt. Finally, he concluded with this impassioned appeal to prejudice against the defendant and sympathy for the plaintiff:

"So, it is in your hands. You now have the responsibility, and with all the sincerity of my command I implore, I beg you to render justice in this case. Not in the form of punishment but as you have the legal responsibility to do all that you can do within your human limitation, and that is to translate this life, this human being made in God's own image, crushed, killed, translate that life into dollars and cents. * * *"

■ To cap it all, there was the further and highly prejudicial error of charging the jury as follows:

"The testimony of all of the witnesses for the plaintiff has made out what we call in law a circumstantial case, and you will consider the evidence in the light of these circumstances as they have been adduced from the witness stand."

Though exception was taken to the charge and immediately called to the court's attention, the district judge, saying, "If that was included in the charge it certainly was not my intention", called for the stenographer's notes and did not make the correction until after the jury had been out more than thirty minutes deliberating under a charge which had advised them that the plaintiff had made out her case and the jury must consider their verdict in the light of the circumstances detailed by her, rather than in the light of the testimony as a whole, including the direct testimony of defendant and his witnesses.

In the light of the errors above referred to, if the evidence in the case had been ample to support the verdict and the verdict and judgment, but for the manner and way in which the case

3. "This is a rather bizarre case. The plaintiff is in the position of not having any eye witnesses to bring here to this court to testify as to what happened. *The only eye witness to this tragedy was the hit and run driver, and I know of no act that man commits upon man more despicable and cowardly than the hit and run driver.* * * So I say to you ladies and gentlemen of the jury, that this case will present a mystery, if you consider the lack of an eye witness to the very instant of Byrd Mercer being struck from behind, as he was walking along the highway. *But, after hearing all the evidence and these officers, and these witnesses as to what were the circumstances surrounding this occurrence and this tragedy, we feel confident that you will come to the same conclusion that we have, and that the officers have, and that is that Paris Theriot was a hit-and-run driver."* (Emphasis supplied.)

was tried, could stand, the judgment would have to be reversed for the errors which, dominating the trial, deprived the defendant of his day in court and caused his conviction, on rumor and hearsay, not of negligent fault but of bribery and corruption.

There remains only the determination whether, with the record stripped of all its erroneous and prejudicial occurrences, the admissible and relevant evidence in the case was sufficient to support a verdict and whether, if not, the case should nevertheless be remanded for a new trial in accordance with law.

On the first phase of this inquiry, appellant, pointing to the complete absence of any evidence, circumstantial or otherwise, that Theriot's car struck the deceased or that Theriot was in anywise negligent, and to the uncontradicted direct evidence of defendant's witnesses to the contrary, and relying upon Benton v. Blair, 5 Cir., 228 F.2d 55; Deitz v. Greyhound Corp., 5 Cir., 234 F. 327, and the many cases from this circuit to the same effect cited therein, insists that a directed verdict was demanded. Further urging upon us that for the jury to find liability under the evidence in this case would be pure speculation, defendant, quoting from Moore v. Chesapeake & Ohio R. Co., 340 U.S. 573, at page 578, 71 S.Ct. 428, at page 430, 95 L.Ed. 547: "This would be speculation run riot. Speculation cannot supply the place of proof. Galloway v. United States, 319 U.S. 372, 395, 63 S.Ct. 1077, 1089, 87 L. Ed. 1458", and citing and quoting from a number of the cases, many from this court, which have so held, confidently asserts that there is no doubt that a verdict in his favor should have been directed. Cf. Smith v. General Motors, 5 Cir., 227 F.2d 210, and McNamara v.

American Motors Corp., 5 Cir., 247 F.2d 445, both circumstantial evidence cases.

On her part, appellee, not taking serious issue with the appellant's statement of the governing rule, that trial by jury means trial by judge and jury, except to the extent that the quotation from Watn v. Pennsylvania R. Co., 3 Cir., 255 F.2d 854,[4] an F.E.L.A. case, that a verdict in the federal court may rest on conjecture and speculation, may be regarded as doing so, and relying on cases in which, upon their particular facts, this court and other courts have held that there was sufficient evidence under the laws of right reason to take the case to the jury, insists that a jury case was made out and the motion for a jury verdict was properly denied. In further support of this view, appellee quotes from the order of the trial court, denying motion for judgment and alternatively for a new trial:

"Reasons. No one who sat through this trial and heard the witnesses could reasonably come to any conclusion except the one the jury came to."

Unfortunately for appellee's reliance thereon, the statement proves too little or too much. If, as appellee seems to think, the judge was giving as his reason for denying the motion that he thought there was sufficient evidence to support the verdict of the jury for plaintiff, it would add to the case nothing more than appears in every case where the judge denies such a motion, that the district judge held a different view from that of the movant. This is not, however what the district judge said. What he said was the same thing that the appellant is saying, that there was no issue for the jury, that the evidence demanded a verdict by instruction, not

4. With respect to which, saying only, "Not in the Fifth Circuit while this court sits", we cite Milom v. New York Central R. R. Co., 7 Cir., 248 F.2d 52 and Gibson v. Elgin, J. & E. Ry. Co., 7 Cir., 246 F.2d 834, opinion on rehearing, and the Memorandum of Mr. Justice Frankfurter, in which Mr. Justice Harlan joins, on denial of certiorari in that case:

" * * * Not until this Court explicitly holds that 'in F.E.L.A. cases, speculation, conjecture and possibilities suffice to support a jury verdict,' which is the holding of the Court of Appeals in this case, 246 F.2d 834, 837, is that to be assumed to be the law of this Court." 355 U.S. 897, 78 S.Ct. 270, 2 L.Ed.2d 193.

indeed, as appellant insists, for the defendant but one for the plaintiff. If the judge really meant this, of course he should not have submitted the issue of liability of the defendant but should have instructed a verdict for plaintiff thereon.

We do not believe that anyone could reasonably contend or that the district judge thought, that a verdict for plaintiff was, as matter of law, demanded. Indeed we believe he meant to say, and we agree with him in saying it, that in the atmosphere generated in and by the trial, no other verdict could reasonably have been expected from the jury. But, as already stated, this is not a valid consideration, and we agree with appellant that a verdict for him was demanded.

Of the cases cited by appellee in her supplemental brief, it is sufficient to say that these, like all the cases cited by both sides to the point under discussion, are fact cases and in each the facts must be looked to to determine for that court the correctness of its decision, whether in the particular case there was or was not a fact issue for the jury. It should be noted, however, as to the cases appellee cites from New York, as is pointed out in Noseworthy v. City of New York, 298 N.Y. 76, 80 N.E.2d 744, on the authority of which these cases were decided, it was held that since the passage of the Decedent Estate Law of New York, Consolidated Laws, Sec. 131, in a death case a plaintiff is not held to as high a degree of proof of the cause of the ac-

tion as where an injured plaintiff himself describes the occurrence, and, further, in Wieland v. Third Ave. Transit Corp., 270 App.Div. 885, 61 N.Y.S.2d 359, affirmed 296 N.Y. 1047, 73 N.E.2d 914, it was held that in the absence of proof of an actual collision, there is no basis for the finding of negligence. It should be noted, too, that in the cases on which appellant relies, the immediacy of the discovery of the injury and the fact that there was no evidence of any other person, motor vehicle or object which in the brief moment of time when the accident occurred could have influenced the result, were the deciding factors. See also Wank v. Ambrosino, 307 N.Y. 321, 121 N.E.2d 246, in which the court held that proof sufficient to support an inference that a person was struck by a car was not, even in a death case, sufficient to support a finding of negligence.

■ This is not to say that some of the cases cited by appellant and some cited by appellee, if viewed as stating principles of law, could not be regarded as favorable to those who cite them. Considered, as they must be, however, as merely the application of legal principles to the facts of the particular case, they cannot be accepted as contrary to our conclusion here, that the evidence offered on this trial was not sufficient to take the case to the jury.[5]

■ Because, however, evidence, as distinguished from rumor and speculation, as to the why and how of the death of plaintiff's decedent and as to the responsibility of defendant for it, may

5. In view of the approach to the law of the case taken by both parties as to the function of judge and jury in a jury tried case, it will not be necessary for us to enter here upon a philosophical discussion of the struggle, beginning with the dissent of the activists in the Galloway case, supra, to change the ancient landmarks so that a trial by jury in the federal court will no longer be a trial by judge and jury, with the judge responsible for the just outcome of the trial, but a trial by the jury alone with the judge as a spectator or, at best, a figurehead. We think, however, we should say that in the controversy thus launched and still continuing, we stand firm against the judicial activism back of the struggle and the results it seeks to achieve, and, regarding as we do the guaranties of the Seventh Amendment, as applicable to plaintiff and defendant alike, we cannot understand how protagonists for the change can look upon the amendment, as apparently they do, as intended for the benefit of plaintiffs alone and, so regarding it, as the dissenters in the Galloway case apparently did, advocate doing away with or limiting, beyond the ancient use, the control and guidance of the trial by an informed and experienced judge.

have been or may be discovered, we order the judgment reversed and the cause remanded with directions to enter a judgment for the defendant unless plaintiff, within a time and under conditions to be fixed by the district judge, makes a satisfactory showing that on another trial evidence of sufficient probative force to justify submission of the cause to the jury will be offered, in which event the judgment shall be for a new trial.

Reversed and remanded with directions.