**KIRBY LUMBER CORPORATION,**
Appellant,

v.

**Samantha Smart WHITE et vir,**
Appellee.

No. 18174.

United States Court of Appeals
Fifth Circuit.

Feb. 8, 1961.

Rehearing Denied March 31, 1961.

Frank G. Evans, III, Houston, Tex., Fountain, Cox, Gaines & Fox, Joyce Cox, James A. Pakenham, Houston, Tex., for appellant, Kirby Lumber Corp.

Leonard E. Choate, Beaumont, Tex., Robert W. Hillin, Liberty, Tex., for appellee.

Before TUTTLE, Chief Judge, and CAMERON and WISDOM, Circuit Judges.

CAMERON, Circuit Judge.

Samantha Smart White (hereinafter called appellee), joined pro forma by her

husband McKinley White, sued appellant Kirby Lumber Corporation for an undivided one-fifth interest in four tracts of timbered land aggregating one hundred ninety acres in Newton County, Texas, and for the value of timber cut by appellant from said land. The action, being one in trespass to try title, was begun in a state court of Texas and was removed on grounds of diversity of citizenship to the court below where it was tried before court and jury.

After denying appellant's motion for a directed verdict, made when appellee rested and repeated after all the evidence was in, the trial court submitted the case to the jury upon four special issues, which the jury found in favor of appellee. Each party filed a motion for judgment on the verdict and appellant filed also a motion for judgment notwithstanding the verdict and a motion for new trial. The court below denied all motions and entered judgment based upon the jury's answers to the special interrogatories, in which it awarded appellee title to an undivided one-tenth interest in the land, together with damages in the sum of $1,380.15 representing one-tenth of the value of the timber cut by appellant during the years 1956 and 1957.

Dennis and Harriet Smart were a common source of title through whom both parties claimed. These two had six children: Enoch Smart, a son who died intestate when he was a child and while Dennis and Harriet were still living; a daughter, Kathy (sometimes known as Katherine or Cassie), the mother of appellee Samantha Smart White, who also died before Dennis and Harriet; and Samuel Smart, J. D. Ed Smart, Marge Smart, and Kizzie Smart, all of whom died after their father, Dennis Smart.

Appellee claimed to own through inheritance from Dennis and Harriet, her grandfather and grandmother, an undivided one-fifth interest. Manifestly the court below permitted her to recover only as heir of her grandmother the one-tenth interest for which judgment was entered, after it found that the grandfather had disposed of his interest to appellant's predecessor in title, George W. Powell.

Appellant introduced in evidence from the land records of Newton County, Texas, pursuant to abstract of title it had filed under the Texas Statute copied in footnote 2 infra, a series of deeds executed in 1895 and 1896 by Dennis Smart and his four living children, by which they partitioned the lands involved in this action by cross conveyances to each other; and deeds conveying the lands to George W. Powell. Although these deeds were attacked as forgeries, the court below evidently thought there was not sufficient evidence to submit their claimed invalidity to the jury, as it refused appellee's requested instruction asking that this be done. The court admitted testimony to the effect that Powell was a man of good reputation for integrity, truthfulness and honesty, and there was no evidence to the contrary.

A recorded conveyance was also introduced in evidence by which Powell conveyed the lands here involved on March 1, 1902 to George W. Carroll. The series of conveyances mentioned in the foregoing paragraph were filed for record and recorded at about the same date. As a part of its chain of title, appellant introduced in evidence also three deeds which are claimed by appellee in her argument before us to be forgeries:

(a) Certified copy of a deed dated February 28, 1902 and given by Samantha Smart to G. W. Powell, which was acknowledged on the same date before C. H. Howard, Notary Public of Newton County, and was certified as having been filed for record March 1, 1902 and duly recorded.

(b) Photostatic copy of original deed dated April 23, 1900 from Dennis Smart, Samantha Smart, M. J. Smart and Kizzie Smart to Houston Shankle, duly certified by the clerk of the County Court of Newton County to have been recorded January 9, 1901 in the land records of said county. The acknowledgment of the four grantors was taken by

John M. Harger, the County Clerk. It referred to appellee Samantha Smart as a feme sole.

(c) Copy of deed of Samantha Smart White to H. T. Twine dated February 6, 1922, acknowledged the same day before J. W. Westbrook, Notary Public of Newton County, Texas and filed for record on July 22, 1922 and duly recorded.

All of these written instruments had been received in evidence under the statute of the State of Texas dealing with ancient documents,[1] and also under the Texas Statutes making competent, evidence of recorded instruments bearing due acknowledgment by the grantor or other person before a notary, Articles 3723 and 5956, Vernon's Texas Civil Statutes.

If the last mentioned conveyances were valid, it is undisputed that appellant had, through them and mesne conveyances, record title to the lands in controversy. But some of the deeds were challenged as forgeries under Article 3726 of Vernon's Code.[2]

Appellee herself filed an affidavit stating upon oath: "that she believes to be forged the instrument of writing purporting to be a deed [item (a) supra], dated the 28th of February, 1902 Samantha Smart, grantor to G. W. Powell, grantee * * *" Some months later her attorney filed a similar affidavit stating that "based upon his investigation of said cause he believes that the following instruments of writing to be forged * * *" The attorney's affidavit included the instrument covered in appellee's affidavit, supra, the partition deeds and the deeds to Powell executed in 1895–1896, and other writings which the court below did not submit to the jury in its interrogatories and concerning which there was little or no proof.[3]

The only oral testimony touching on the genuineness of the deeds was given by the appellee herself. She testified that she "never did make no sign no deed

---

1. Art. 3713, Rule 16. "Ancient wills, deeds and other instruments more than thirty years old, when offered in evidence, unblemished by alterations and coming from such custody as affords a reasonable presumption in favor of genuineness with other circumstances of corroboration, will be admitted in evidence without proof of their execution."

2. "Art. 3726. Recorded instruments admitted without proof.
"Every instrument of writing which is permitted or required by law to be recorded in the office of the clerk of the county court, and which has been, or hereafter may be, actually recorded for a period of ten years in the book used by said clerk for the recording of such instruments, whether proved or acknowledged in such manner or not, shall be admitted as evidence in any suit in this State without the necessity of proving its execution, provided, no claim adverse or inconsistent to the one evidenced by such instrument shall have been asserted during that ten years; provided, that the party to give such instrument in evidence shall file the same among the papers of the suit in which he proposes to use it at least three days before the commencement of the trial of such suit, and give notice of such filing to the opposite party, or his attorney of record;

and unless such opposite party, or some other person for him, shall, within three days before the trial of the cause, file an affidavit stating that he believes such instrument of writing to be forged. Whenever any party to a suit shall file among the papers of the cause an affidavit stating that any instrument of writing, recorded as aforesaid, has been lost, or that he cannot procure the original, a certified copy of the record of any such instrument shall be admitted in evidence in like manner as the original could be. After such instrument shall have been actually recorded as herein provided for a period of ten years, it shall be no objection to the admission of same, or a certified copy thereof, as evidence, that the certificate of the officer who took such proof or acknowledgment, is not in form or substance such as required by the laws of this State; and said instrument shall be given the same effect as if it were not so defective."

3. We do not find in the record any affidavit charging that the conveyances lettered "(b)" and "(c)" supra, and referred to in Interrogatories 3 and 4 infra, were forged. However, this appears to have been waived, and the case was tried on the theory that all ancient deeds had been attacked by an affidavit of forgery.

[sic]." On cross examination she testified, "I never did make no deeds," and, "I said, 'No, sir, I haven't sold no land no none of this land.'" Then, on redirect examination, she testified in response to the question, "Did you ever sign a deed to anybody?" "No, sir, I never signed no deed."

The only evidence touching on the appearance and acknowledgment of the execution of the deeds consisted of the following two questions and answers:

"Q. Did you ever know Mr. Homer Howard, C. H. Howard?

"A. I hear talk of him.

"Q. Did you ever know Mr. Thomas Casey?

"A. No, sir."

The Court submitted to the jury four interrogatories which, with the jury's answers, are copied in the margin;[4] and it gave an extended oral charge to the jury explaining the various Texas statutory presumptions under which the special interrogatories were submitted.

Appellant argues seven specifications of error which, in its brief, it groups under four questions:

(1) "Did appellee establish her title to the claimed interest in controversy?"

(2) "Is there any substantial evidence that appellee's deeds to appellant's predecessors in title and to others were forged, and that appellee did not appear before the officers whose certificates are attached to such deeds?"

(3) "Is appellee bound by the deeds of her ancestors, under whom she claims, to recognize appellant's title to the lands in suit?"

(4) "Did appellant acquire title to the lands in suit under the five, ten and twenty-five year statutes of limitation?"

The points argued by appellant were properly preserved by objections to testimony and to the charge of the court, or by its requests that the court below submit to the jury nineteen interrogatories covering special issues, all of which were refused or rejected by the court below.

It was proper for the court below, in the exercise of its discretion, to submit the case to the jury upon special issues, if it concluded that appellee had estab-

4. "Interrogatory No. 1:

"Do you find from a preponderance of the evidence that Dennis Smart was married to Harriet Smart at the times the lands in controversy herein were, conveyed to Him?

"Answer: Yes.

"Interrogatory No. 2:

"(a) Do you find from a preponderance of the evidence that Samantha Smart White executed the deed (Defendant's Exhibit No. 32) dated February 28, 1902, which purported to convey all of the undivided interest of Samantha Smart in the lands in controversy herein to G. W. Powell?

"Answer: No.

"(b) Do you find from a preponderance of the evidence that Samantha Smart White appeared before C. H. Howard, A Notary Public in and for Newton County, Texas, on or about April 23, 1900, and acknowledged that she executed the deed referred to in question (a) of this interrogatory?

"Answer: No.

"Interrogatory No. 3:

"(a) Do you find from a preponderance of the evidence that Samantha Smart White executed the deed (Defendant's Exhibit No. 6) dated April 23, 1900, purporting to convey 60 acres of the J. S. Tompkins Survey to Houston Shankle?

"Answer: No."

"Interrogatory No. 4:

"(a) Do you find from a preponderance of the evidence that Samantha Smart White executed the deed (Defendant's Exhibit No. 55) dated February 6, 1952, [sic] purporting to convey to H. T. Twine 55 acres of land located in the John S. Tompkins Survey in Newton County, Texas?

"Answer: No.

"(b) Do you find from a preponderance of the evidence that Samantha Smart White appeared before J. W. Westbrook, a Notary Public in and for Newton County, Texas, on or about February 6, 1922, and acknowledged that she executed the deed referred to in question (a) of this interrogatory?

"Answer: No."

lished her case by sufficient substantial evidence, measured by proper standards, to warrant such submission. This procedure is provided by Rule 49(a), F.R. Civ.P., 28 U.S.C.A.[5] Before discussing whether the court proceeded according to law in determining whether there was sufficient evidence to warrant submission of the issues to the jury, we point out some errors it committed in the submission which would, in our opinion, require a reversal.

■ We think that the court below erred in its handling of the testimony which was admitted touching possession of the lands through the years, including the payment of taxes on them. It evidently thought that, if the jury found that the instrument or instruments by which it was claimed appellee divested herself of title had been forged, title had remained in her throughout, and appellant and its predecessors in title were nothing more than joint tenants or tenants in common with appellee, so that their occupancy could not be adverse to the appellee and the undivided interest claimed by her. Even if we assume this to be true, we think it was incumbent upon the court below under Rule 49(a)[6] to "give to the jury such explanation and instruction concerning" the evidence of possession which would have enabled the jury to consider this evidence in determining whether appellee had in fact ever,

during the more than fifty years her conveyance to Powell was of record, really made or asserted any claim to title and whether her claim, so long delayed was really in good faith. Particularly is this true in connection with the special interrogatory requested by appellant under Article 5519a of Vernon's Code,[7] which was refused by the court below.

■ We find, too, that the record before us does not clearly reveal that the court applied the correct standards of proof in passing upon appellant's motions for directed verdict and for judgment notwithstanding the verdict. The court properly acted on the thesis that the burden of proof is a matter of substance and in a diversity case is, therefore, governed by the State law, Cities Service Oil Company v. Dunlap, 1939, 308 U.S. 208, 60 S.Ct. 201, 84 L.Ed. 196; and see the general discussion of the subject by Professor Moore in his work on Federal Practice, Vol. 1, Par. 0.314, pp. 3305 et seq. This principle embraces the various Texas statutes applied by the court below raising presumptions and counter presumptions with respect to instruments appearing upon the land records and the proof offered by the parties in connection therewith.

■ Appellee stakes her main reliance upon Article 3726, footnote 2 supra, claiming that under its terms, her affidavit and that of her attorney charging

---

5. "(a) *Special Verdicts.* The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event the court may submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the several special findings which might properly be made under the pleadings and evidence; * * The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. * * * "

6. Angeline Casualty Co. v. Bluitt, 5 Cir., 1956, 235 F.2d 764; Jackson et al. v. King, 5 Cir., 1955, 223 F.2d 714; and Employers Mutual Casualty Co. v. Johnson, 5 Cir., 1953, 201 F.2d 153.

7. "Art. 5519a. *Title to land by limitation*

"In all suits involving the title to land not claimed by the State, if it be shown that those holding the apparent record title thereto have not exercised dominion over such land or have not paid taxes thereon, one or more years during the period of twenty-five years next preceding the filing of such suit and during such period the opposing parties and those whose estate they own are shown to have openly exercised dominion over and asserted claim to same and have paid taxes thereon annually before becoming delinquent for as many as twenty-five years during such period, such facts shall constitute prima facie proof that the title thereto had passed to such persons so exercising dominion over, claiming and paying taxes thereon."

forgery placed the burden upon appellant to prove that the instruments attacked were not forgeries. The decisions of Texas Courts under this statute are legion.[8] We quote from Texas Jurisprudence, Vol. 14–B, Deeds, pp. 535 et seq., as giving a distillation of the rules established by Texas decisions with respect to the statute:

"* * * The burden does not shift from one party to the other. It remains on the party offering the deed, though the weight of evidence may shift from side to side during the trial according to the nature and strength of the proof offered in support or denial of the main fact to be established, viz., the execution of the deed.

"It seems that in cases where evidence is introduced by the respective parties, tending to prove and to disprove the issues of fact, the occasion will not arise to declare upon whom the burden of proof rests. The question then becomes merely one of preponderance of evidence, which is for the decision of the jury under all the evidence introduced, whether direct or circumstantial.

"Under the facts of a particular case it may not be error, however, where there is sufficient proof to permit the introduction of the deed, for the court to allow the instrument to go to the jury as prima facie a genuine instrument. The courts sometimes speak of the burden of proof 'shifting' to the party assailing the genuineness of the instrument. What is meant, however, is that the burden of going ahead with the evidence passes from one party to the other.

"When a deed, or a certified copy thereof, is properly admitted, in the absence of evidence subsequently received tending to show that the deed is not genuine, a court may instruct the jury to consider the execution of the instrument as proven. The party impeaching a deed must sustain his pleading by lawful evidence. If he introduces no proof whatever (the affidavit not being evidence), and the opposing party proves the making of the deed in accordance with some of the modes prescribed by the common law, the genuineness of the deed is established. The jury in the absence of all proof to the contrary could not find otherwise."

The court below apparently construed this statute as merely placing upon appellant the burden of going forward with the proof which entitled the written instruments involved to be received in evidence, with the idea that the decision should thereupon be based upon the facts in evidence unaided by any presumption with respect to the facts. This is illustrated by the court's actions in connection with the series of deeds by which the Smarts partitioned these lands in 1895–1896 and conveyed them to Powell. Appellee filed a motion praying that these conveyances, among others, be stricken. She also requested a number of special charges calling upon the jury to determine whether said deeds were forgeries. The court overruled the motion and refused all of the requested charges. This amounted to the finding that, as to that series of deeds, properly in evidence, the appellee had not offered sufficient evidence to make out a case for jury decision; and to a decision that, as a matter of law, the writings had not been forged. We think this attitude and action of the trial court were proper.

▆▆▆ We are left in doubt whether the court applied the rule established by the Texas courts that proof that a deed is forged requires more than the plain uncontradicted testimony of the alleged maker that he did not sign the deed, or that the signature is not his signature. If the deed in question has been acknowledged before an officer whose certificate

8. The parties have filed with us five briefs, and one of them cites approximately eighty cases decided by Texas Courts, a good percentage of which deal with this statute.

is affixed thereto, not only may the validity of the deed be proved by the certificate of acknowledgment, notwithstanding failure of proof of the genuineness of the signature of the grantor, Stout v. Oliveira, Tex.Civ.App.1941, 153 S.W.2d 590; McAllen v. Raphael, Tex.Civ.App. 1906, 96 S.W. 760; Houston Oil Co. of Texas v. Goodrich, 5 Cir., 1914, 213 F. 136, 139, but the standard of proof which the court must find before submitting the issue of genuineness to the jury is that "the proof must be clear and unmistakable." Stout v. Oliveira, supra, 153 S.W.2d at page 597.

■ It is further established in this circuit that the quantity and quality of proof necessary to make out a case for submission to a jury in a federal court are determined by the Seventh Amendment to the Constitution of the United States, the Federal Rules of Civil Procedure and the decisions of the Courts of the United States, Revlon, Inc. v. Buchanan, 1959, 271 F.2d 795, 800, and cases therein cited. We cited there the leading case of Reuter et al. v. Eastern Air Lines, Inc., 5 Cir., 1955, 226 F.2d 443, 445–446, which stated the general rule thus:

"In determining whether there is sufficient evidence to take the case to the jury, a federal judge performs a judicial function and is not a mere automaton. Gunning v. Cooley, 281 U.S. 90, 93, 50 S.Ct. 231, 74 L.Ed. 720. He must determine, 'not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it.' * * * 'The requirement is for probative facts capable of supporting, with reason, the conclusion expressed in the verdict.' * * * " [9]

We are not unmindful of the fact that the rule in this circuit is not in agreement with that followed elsewhere, Dick v. New York Life Ins. Co., 1959, 359 U.S. 437, 445, 79 S.Ct. 921, 3 L.Ed.2d 935. We adhere to our rule, confident that it is the correct one.[10]

■ While the evidence of appellee in the record before us on the vital issues we have discussed is weak indeed under the principles long recognized in this Court,[11] we do not render judgment here in appellant's favor. Instead, as we did in Theriot, we order the judgment reversed and the case remanded for entry of such a judgment unless, within a time and under conditions to be fixed by the district judge, appellee makes a satisfactory showing that, on another trial, evidence of sufficient probative force to justify submission of the case to the jury will be offered; in which event the judgment shall be for a new trial.

9. And see also the following cases from this circuit: Pogue v. Great Atlantic & Pacific Tea Co., 1957, 242 F.2d 575; Pass et al. v. Firestone Tire & Rubber Co., 1957, 242 F.2d 914; Royal Indemnity Co. v. Curtis, 1958, 256 F.2d 329; and E. I. duPont de Nemours & Co. v. Kissinger, 1958, 259 F.2d 411; Theriot v. Mercer, 1959, 262 F.2d 754; Continental Casualty Co. v. Holmes, 1959, 266 F.2d 269, certiorari denied by Supreme Court of United States Oct. 26, 1959, 361 U.S. 877, 80 S.Ct. 140, 4 L.Ed. 2d 114; and Nashville Bridge Co. v. Ritch, 1960, 276 F.2d 171.

10. In Dick v. New York Life Ins. Co., supra, 359 U.S. at page 445, 79 S.Ct. at page 926, the Supreme Court refers to 5 Moore's Federal Practice (2d Ed. 1951), Par. 38.10, where, supplemented by the Pocket Part, there is a full discussion of this lack of agreement. Professor Moore, in his first paragraph, states what seems to be his conclusion on the subject: "In Herron v. Southern Pacific Co. [283 U.S. 91, 51 S.Ct. 383, 75 L.Ed. 857], a diversity case, the court ruled that a federal court could direct a verdict, when proper under common law principles, although under state law the issue had to be submitted to the jury. Although this case was decided prior to Erie [Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188], it has been followed since Erie by courts that have carefully considered the matter. Courts which have applied Erie in determining what issues are triable by a jury have not given due consideration to the provisions of Article III and the Seventh Amendment."

11. Cf. Theriot v. Mercer, 5 Cir., 1959, 262 F.2d 754, 759–760, and cases there cited.

Reversed and remanded with directions.

## On Motions To Substitute Party Appellee And For Rehearing.

PER CURIAM.

Upon considering the motion to substitute party appellee, together with notice to the opposing party, and it appearing that the substitution should be made, and no cause against said substitution being shown, it is ordered that McKinley White, as the surviving husband and sole and only surviving heir at law of Samantha Smart White, be and he hereby is substituted as appellee in the place and stead of Samantha Smart White, deceased, and that this cause now proceed in the name of said substituted appellee McKinley White.

Upon considering appellee's petition for rehearing, it is ordered and decreed that said petition be and the same hereby is denied.